Argued November 19; reversed December 17, 1946

# BRATT *v.* SMITH ET AL.

### (175 P. (2d) 444)

*Frank H. Hilton,* of Portland, for respondent.

*Joseph O. Stearns, Jr.,* of Portland (with L. E. Latourette, City Attorney, and M. C. Rushing, Deputy City Attorney, both of Portland, on brief), for appellants.

BELT, C. J.

This is an action to recover damages against two police officers of the city of Portland for an alleged false arrest and imprisonment of the plaintiff. Plaintiff in substance alleges that the defendant police officers, in arresting him for a "disorderly act" by then and there "being in an intoxicated condition and fighting with arresting officers", acted maliciously and without probable cause. The cause was submitted to a jury and a general verdict returned in favor of plaintiff for $35, special damages; $1000, general damages; and $2500, punitive damages. The jury, in response to special interrogatories—so far as material herein— thus answered:

1. "Were the defendants justified upon entering the premises at No. 10 N. W. Third Avenue and seeing the plaintiff in believing that they should make an investigation?"

Answer: "Yes."

2. "Did either of the defendants act with undue rudeness in making an investigation?"

Answer: "Yes."

3. "If the answer to the preceding question is Yes, which of the defendants did so?"

Answer: "Both."

4. "Did either of the defendants strike the plaintiff in the back of the head or elsewhere with his fist at any time while the plaintiff was in the custody of these defendants?"

Answer: "Yes."

5. "If you find that either of the defendants struck the plaintiff, which one of the defendants did so?"

Answer: (marked out) "Officer Smith."

6. "Did the defendants or either of them act wantonly or maliciously?"

Answer: "Yes."

7. "If the answer is Yes to the foregoing question, state which of the defendants did so."

Answer: "Both."

Defendants appeal, assigning error: (1) In refusing to direct a verdict in their favor on the ground that there is no substantial evidence to support the judgment; (2) Misconduct of counsel for plaintiff in argument to the jury. These assignments will be considered in the order stated.

■ Appellants' brief on appeal seems to have been prepared on the theory that this is a trial *de novo*. It is, however, a law action in which this court cannot substitute its judgment on questions of fact for that of the jury. We will not, therefore, review conflicting

evidence. Our sole inquiry, relative to the motion for a directed verdict, is whether there is any substantial evidence to support the verdict and judgment rendered against the defendants. On demurrer to the evidence, the statement of facts must be made in the light most favorable to the plaintiff.

The plaintiff is a man about eighty-six years of age. He came from eastern Oregon to Portland three years ago and worked for a short while with the Holman Fuel Company. Thereafter, he was employed in a shipyard at Portland and worked for a period of two and a half years, missing only one day during that time. Plaintiff never before had been in jail, nor had he ever been arrested for any crime. There is evidence tending to show that he is a sober and industrious citizen. He says that he has never drunk intoxicating liquor of any kind. There is much evidence to support his claim of sobriety.

It was the custom of the plaintiff, after his shift ended at the shipyard, to have his noon lunch at the counter in "Erickson's Cafe" on Third Avenue in the north end of Portland. In this place, there is a large bar—where beer is sold, a lunch counter, and about ten card tables. About noon on February 14, 1944, plaintiff was seated at one of the card tables with his elbows resting thereon. Plaintiff, in response to the question as to what then occurred, testified:

"A I was a little dozy, and I had only been there a few minutes and the police came up and kicked me on the sole of the shoe, not rough, and I asked them what they wanted. I couldn't understand what they said, they were behind me, and I said, 'What do you want?' I repeated it. Then they jerked me out of the chair and struck me on the head and rushed me out and continued to

pound me on the head for a block, put me in a rig, and hauled me to jail. I didn't know what the charges were. I asked them what the charges were and they said, 'Being drunk and resisting an officer.'

"Q  Did you resist an officer?
"A  No, I did not.

"Q  What did you do in trying to prevent being arrested? Did you do anything to prevent your arrest?
"A  No, I didn't do anything, only I couldn't understand what they wanted.

"Q  Did you try to hit anybody or strike anyone?
"A  No.

\*   \*   \*   \*   \*

"Q  Where did they hit you?
"A  Right up here on the head, and kept repeating it.

"Q  Did you attempt to strike either one of them?
"A  Oh, no. They were behind me.

\*   \*   \*   \*   \*

"Q  Do you know which one did the hitting?
"A  No, I don't. I suppose maybe they both did. I don't know.

"Q  How were you taken to the police station? You say a wagon took you. What kind of a wagon?
"A  The police cab.

\*   \*   \*   \*   \*

"Q  What took place when you got to jail?
"A  They searched me and took my money and things off of me. I didn't know how to proceed. They told me that I could put up a bond; it would cost me ten dollars for a hundred dollar bond. I had about sixty-two dollars on me; I just cashed a check. I don't carry much money. I wanted them to hold that for my appearance the next morning. No, they said, 'It is a very serious charge.' I said, 'What is the charge?' They said, 'Being drunk

and resisting an officer.' They said it would be a hundred dollars. I had to phone and get the bondsman to come, and I gave him ten dollars to go my bond.''

Mr. Ray L. Baker testified that he was in the cafe at the time of the arrest of plaintiff and that he was sitting about four feet from him. Baker thus gave his version as to what occurred:

''The officer came strolling through * * * * walked up lightly and kicked the old gentleman on the bottom of the foot and said, 'Get up and get out.' The old fellow'' (plaintiff) ''was sort of dozing and he looked up and said, 'What for?' So the officer got behind him and took hold of his collar and said, 'Get up and get out.' The old fellow just looked up at him. He'' (the officer) '' said, 'You think I am fooling', so he shoved him up out of the chair as fast as he could * * * * and he started taking him out of there, walking real fast, and this old gentleman couldn't keep up with him. When he got about twenty or thirty feet * * * * the other officer grabbed him by the arm, and when he did the gentleman in the blue shirt'' (defendant Smith) ''started beating him over the back of the head.''

This witness also testified that plaintiff had not been drinking and did nothing to provoke the officers.

After plaintiff had been in jail an hour or two, bail was furnished and he was released from custody. The complaint was sworn to by defendant Ragan. Trial thereafter was had in the Municipal Court and the charge of disorderly conduct against the plaintiff was dismissed. This action against the police officers followed.

■■ Accepting the evidence offered on behalf of the plaintiff as being true—as we must do on this appeal—

we think a reasonable inference could be drawn therefrom that the arrest and imprisonment of plaintiff was without probable cause and in utter disregard of his rights as a citizen. Certainly, beating an old man eighty-six years of age across the head and bumping him in the back with the knee as he was being pushed along speaks of conduct affording a basis for the award of punitive damages. In all fairness to these officers, it may be said that they positively deny any mistreatment of the plaintiff, and there is much evidench tending to corroborate them. However, that matter was an issue of fact for the determination of the jury, and its finding thereon is conclusive.

■ There is undoubtedly evidence in the record which—if true—would justify the conclusion that these officers had no reasonable ground to believe that plaintiff was guilty of disorderly conduct or that he had violated any law. Under such circumstances, his arrest was an unlawful act in which both of these officers were actively engaged. The defendants having thus wrongfully started the machinery of the law in motion, it follows that they are jointly and severally liable in damages for what was done by either of them in furtherance of such unlawful arrest and imprisonment. In the instant case, the defendants were acting in concert and were engaged in the common enterprise of making an unlawful arrest. As joint tortfeasors, they were responsible for what followed from the wrongful act of arresting the plaintiff without probable cause, and in this jurisdiction courts will not pause to compare the degree of culpability. In this jurisdiction, there can be no apportionment of damages between joint tort-feasors. *Johnson v. Oregon Stevedoring Co., Inc.,* 128 Or. 121, 270 P. 772;

*Gill v. Selling et al.,* 125 Or. 587, 267 P. 812,.58 A. L. R. 1556.

■ The contention that the judgment for punitive damages against defendant Ragan cannot be sustained for the reason that he did not strike the plaintiff is unsound. If it is true that Ragan was holding an arm of the plaintiff at the time his fellow officer was beating the plaintiff across the head, we think a fair inference could be drawn by the jury that Ragan participated in such tortious act. At least we cannot hold as a matter of law that the defendant Ragan did not participate in this assult on the plaintiff.

The law applicable to the facts in this case is well stated in 52 Am. Jur., Torts, § 116, wherein it is stated:

> "The general rule is that two or more persons engaged in a common enterprise are jointly liable for wrongful acts done in connection with the enterprise, at least where the enterprise is an unlawful one, in which case all are answerable for any injury done by any one of them, although the damage done was greater than was foreseen, or the particular act done was not contemplated or intended by them. In this respect, it has been held that where two persons are jointly engaged in an unlawful enterprise, and each performs a wrongful act in pursuit of such purpose, one of which acts causes an injury, the parties may be held jointly and severally liable, although it is not known which of the acts caused the injury. On the other hand, there is authority for the rule that where two or more are acting lawfully together in the furtherance of a common lawful purpose, one is not liable for the unlawful act of another, done in furtherance of the common purpose without his concurrence."

Appellants strongly rely on *Anderson v. Maloney,* 111 Or. 84, 225 P. 318, but we think that case may readily be distinguished from the one at bar. Indeed, the principles of law announced in the Anderson case are controlling here and are adverse to the contention of the appellants herein. In that case, police officers Maloney and Sweeney arrested one Jones who admittedly had committed a robbery. It was a lawful arrest. While Jones was in the custody of the officers, he broke away and undertook to escape. He was commanded to stop, but refused to do so; whereupon, both of the officers fired at him. One of the bullets penetrated a window in a passing street-car and killed Walter Askay, a passenger. Action was brought by the administrator of Askay's estate to recover damages on the theory that these officers were joint tortfeasors and had fired their pistols without regard for the safety of other people in the street. The court held as a matter of law that the officers were engaged in a lawful undertaking, namely, that of retaking an escaped felon, and that to justify recovery it was incumbent upon plaintiff to establish which of these officers' alleged negligence caused decedent's death. The court held that a non-suit should have been granted, and stated that "The fallacy of plaintiff's case was in the failure to distinguish between a transaction inherently tortious ab initio and one justified by law * * * ." The court also significantly said that "the case presented is essentially different from the one in which two or more parties are jointly engaged in the prosecution of an unlawful enterprise."

Appellants have cited numerous authorities supporting the legal proposition that "where wrong-doers have not acted in concert, and separate and distinct

injuries are caused by the act or neglect of each, the liability is several only.'' 62 C. J., Torts, § 45. We concur in this statement of the law, but are unable to say that there is no substantial evidence tending to show that these defendant police officers were not acting in concert or were not engaged in the same common enterprise of making an unlawful arrest and assault on the plaintiff. We conclude that no error was committed in refusing to direct a verdict in the defendants' favor. Such would be true even though the evidence did not justify any award of punitive damages.

The serious question in the case concerns the misconduct of counsel for plaintiff in his argument to the jury. The record thus speaks:

"MR. HILTON: * * * * But I submit to you Mr. Bratt is doing a great civic duty, to see that some of this monkey business stops. I think you have got a good example of it right here. I don't know of any better one. If there is any better one I would like to see it. *Of course, someone that has been beat up might be dead and he cannot speak. The dead ones are not here to protest.*

"MR. STEARNS: If your Honor please, I am compelled to object to that sort of play to the jury, that some of these people that are beaten up might be dead.

"MR. HILTON: I didn't say anyone was beaten up. I said anyone that would be beaten up that would be dead cannot speak, and *I think you know very well how many died last year.*

"MR. STEARNS: I do not think that has any business in this case. It has no place in the argument at all.

"MR. HILTON: I will go on. I don't care - - - -

"MR. STEARNS: (interrupting) I object to the making of that sort of statement to the jury, to attempt to play on their sympathies and passion and prejudice.

"THE COURT: Ladies and Gentlemen, you will disregard counsel's statement with respect to the *deaths of other prisoners.* You may proceed." (Italics ours)

■ At the conclusion of the argument of counsel for plaintiff and prior to the giving of the instructions of the court, the defendants on the following morning moved for a mistrial. The trial court apparently was of the opinion that the motion for a mistrial was not timely, but in this conclusion we think it erred. We think the motion was timely.

■■ It is difficult to conceive of an argument which would have tended more to create bias and prejudice in the minds of the jurors. This court has always been liberal in reviewing the argument of counsel before juries, as it is realized that counsel in the zeal of his cause and during the heat of battle may occasionally say things beyond the bounds of propriety. Ordinarily, sustaining an objection to such argument and instructing the jury to disregard the same cures the error. However, argument may be of such character that it cannot be thus cured by the court. The argument in the instant case, in our opinion, went far beyond the bounds of legitimate comment on the evidence and was, in fact, a direct appeal to passion and prejudice. When objection was made to such argument, counsel persisted in driving home the thought that if the dead could only speak about the treatment accorded by policemen to persons in their custody, the jury would have no trouble in reaching a verdict against these

defendants. There was no evidence in the record about the "dead", and it was highly improper to comment thereon. While the court no doubt intended to cure the error, we think its reference to the "deaths of other prisoners" only tended to emphasize it. No good purpose would be served in reviewing authorities cited, all of which involve different factual situations.

On account of the improper argument of counsel, the judgment is reversed and the cause remanded for a new trial.