Argued April 13, reversed and remanded June 2, 1955

# BIDDLE *v.* MAZZOCCO

284 P. 2d 364

*Duane Vergeer* argued the cause for appellant.

*R. C. Anderson* argued the cause for respondent.

Before WARNER, Chief Justice, and TOOZE, LUSK and BRAND, Justices.

## TOOZE, J.

This is an action for damages for personal injuries alleged to have been caused by the negligent operation of a motor vehicle, brought by E. (Edna) S. Biddle, as plaintiff, against Victor Mazzocco, as defendant. A verdict was returned and judgment entered in favor of defendant. Plaintiff appeals.

Plaintiff is a housewife, and at the time of the accident involved in this litigation was 48 years of age. With her husband, Emmett S. Biddle, she is engaged in the business of producing eggs and chickens for sale. She also carries on her duties as a housewife. She has driven motor vehicles since she was 18 years of age.

The accident with which we are concerned occurred about 8 a. m. on February 22, 1952. At that time plaintiff was the operator of a 1948 Chevrolet station wagon, which was loaded with 5 crates of eggs and additional boxes containing 75 dressed chicken fryers. She was operating the motor vehicle in a northerly direction along a paved market road in Clatsop county, Oregon. The road is 16½ feet in width, with narrow, sloping shoulders paralleling it. It is not marked with a painted center stripe.

At the place of the accident there is a private roadway which approaches and enters the market road from the west. This private roadway is approximately 10 feet in width, and as it enters the market road, it spreads out into a "fan", thereby making it easier for any car leaving said private road to enter the highway. The private roadway and the shoulder where it enters the market road are graveled. The gravel shoulder is 2½ feet in width at that point and makes a drop of about 1 foot in 6 feet into the private roadway, and for that reason the private roadway enters the highway on an incline. The view of a driver of a motor vehicle approaching the market road from the private roadway is somewhat obstructed toward the south along that road because of the presence of a dwelling house and a picket fence, but photographs in evidence show a clear view to such driver toward the south for a long distance along said highway after passing the line of the picket fence and before entering with any part of his car upon the traveled portion of the road.

At the time of the accident defendant was operating his 1941 Chevrolet coupe automobile in an easterly direction on said private roadway and was approaching and entering the market road. He did not see plaintiff's vehicle approaching on the market road from the south until it passed in front of him. Plaintiff was traveling at a rate of speed variously estimated from 25 to 45 miles per hour, and defendant at a rate of speed estimated by plaintiff as 10 miles per hour. Plaintiff saw defendant's car approaching the highway when she was about five car lengths distant from the private roadway. She expected defendant to bring his car to a stop before actually entering upon the highway as was required of him by law. However, according to defendant's own testimony, he did not bring his car to a stop before entering the market road. He testified

that he stopped his car with the front wheels thereof about a foot beyond the edge of and upon the pavement, which would put the front bumper of his car a considerable distance further toward the center of the road. Plaintiff testified that he did not stop at all until the front of his car was near or beyond the center line of the highway, and that when she last saw the car it was still moving. Plaintiff also testified that in order to avoid striking defendant's car, she was forced to drive off her right side of the pavement and onto the sloping, wet dirt, and narrow shoulder of the road.

As a result of driving on the sloping shoulder of the road, plaintiff's body was caused to slide from under the steering wheel of her car, although she continued to grip the wheel with her hands. The car was more or less out of control. It proceeded back onto the highway and swerved to the left side thereof. In her attempt to correct the erratic movement of the car, plaintiff again pulled sharply to the right. The car left the roadway on the right, went through a wire fence, and came to rest near a stump. Plaintiff was thrown from the car upon the stump, causing her the severe injuries of which she complains in this action.

Plaintiff charges defendant with negligence in the following respects:

"(1) In entering upon a public road from a private driveway without first yielding the right of way to vehicles approaching upon the public road;

"(2) In failing to keep a proper, or any, lookout for other vehicles upon the public road, and particularly for the vehicle operated by this plaintiff;

"(3) In failing to stop his vehicle before entering upon a public highway from a private road."

In his answer defendant denied the acts of negligence charged against him and affirmatively alleged

that plaintiff was guilty of contributory negligence in the operation of her car in the following particulars:

"(1) In that she operated the same at an excessive rate of speed.

"(2) In that she failed to maintain a proper lookout and to exercise due caution.

"(3) In that she failed to maintain proper control over said automobile.

"(4) In that she failed to operate the same upon her one-half of the paved portion of said highway."

Plaintiff by her reply denied the acts of negligence charged against her.

As her first assignment of error, plaintiff charged that the trial court erred in giving the following instruction to the jury:

"Now turning to the rights and duties upon which these people had and should have observed out there upon the road at the time this incident occurred, *I want to instruct you that the rights of the plaintiff and the defendant to the use of the highway are equal and each of them had the right to be upon the highway at that time and place,* and in using the highway, each must use that degree of care which a reasonably prudent person would exercise under like or similar circumstances, and they must also comply with all the statutory rules governing the operation of automobiles upon the highway." (Italics ours.)

Section 115-338 (a), as amended by ch 301, Oregon Laws 1949 (ORS 483.206), provides:

"The driver of a vehicle entering a public highway from a private road or drive shall stop and yield the right of way to all vehicles approaching on such public highway; except where traffic control signals or other traffic control devices required and installed by the state highway commission, or required and installed pursuant to the order of the public utilities commissioner, indicate that the driver may proceed without stopping."

██ The instruction given is subject to criticism and should not have been given, but we do not believe the giving thereof constituted prejudicial error. As a general proposition, it is true that the rights of all persons to make free use of the highways are equal, but those rights are always subject to regulation. At a given time and a given place under the conditions existing, the right of one person to the use of the highway may be, and frequently is, superior to that of another person. Under the above statute the right of plaintiff to make use of the highway at the time and place in question was superior to that of defendant who was entering the road from a private driveway. Under the facts of this case, as disclosed by defendant's own testimony, he was required as a matter of law to yield the right of way to plaintiff. Therefore, the rights of plaintiff and defendant to the use of the market road were not equal at the time and place involved. Although an abstract and generalized statement of the law, correct in itself, the instruction bore upon no issue in the case. It might have been decidedly misleading. However, the latter part of the instruction, in the light of other specific instructions as to the respective rights and duties of the parties given by the court, tended to remove the curse inherent in the general statement. However, generalized and abstract instructions should be avoided, even though they are modified as the above instruction was modified.

██ As her second assignment of error, plaintiff questions the following instruction given to the jury:

"Now ordinary care means that care and caution which a reasonable person of ordinary prudence would exercise under those circumstances that existed out there and of course, as judges of the facts in the case, it is your duty to determine just what those circumstances were that existed out there. I

want to caution you because counsel argued this matter, that this rule of ordinary care does not mean that care or caution which a person of the age and the ability and knowledge of this plaintiff or this defendant would have exercised at that particular time and place. In other words, you are not to determine what a person just the age and experience and knowledge of this plaintiff should have done out there in the operation of her car. You are to determine what any person of reasonable and ordinary prudence would and should have done in the operation of her car. Likewise, that same rule would have to be applied to the defendant in the operation of his car in determining whether he had operated his car with such due care under all those circumstances that existed.''

We find no error in the instruction as given. Negligence, in the absence of statute, is defined as the doing of that thing which a reasonably prudent person would not have done, or the failure to do that thing which a reasonably prudent person would have done, in like or similar circumstances; it is the failure to exercise that degree of care and prudence that a reasonably prudent person would have exercised in like or similar circumstances. Ordinary negligence is defined in other words, but in the final analysis, and in every definition, the test of the conduct under consideration is based upon the conduct of a reasonably prudent person in like or similar circumstances.

Plaintiff argues, however, that the true test in this case was what a reasonably prudent woman, 48 years of age and possessing the driving experience of plaintiff, would have done or have omitted to do under the circumstances.

We quote from plaintiff's brief as follows:

"A careful reading of this instruction reveals that the Court established in the minds of the jury that the standard of care of this appellant

was what any reasonable and prudent person would have done in the operation of a vehicle. In effect it ignores the circumstances surrounding the appellant's operation of her motor vehicle. Clearly under the applicable rule, the jury is to consider not what *any* reasonable person would have done, but what a reasonable person would have done under these same or similar circumstances as existed at the time of this accident, and it follows, that among the circumstances to be considered in passing upon the conduct of the appellant, were the facts as to her age and her driving experience. This circumstance was by the instruction specifically removed from the consideration of the jury, and this was particularly prejudicial where it had been relied on in argument to the jury.''

If the rule were as plaintiff contends, then a drunken driver, for example, charged with the negligent operation of a motor vehicle, would have to be judged from the standpoint of a reasonably prudent drunk (if there is any such specimen) operating an automobile in like or similar circumstances. Many other examples might be given to illustrate the fallacy inherent in plaintiff's contention, but that is unnecessary.

In support of her contention, plaintiff cites the following decisions by this court: *Greenslitt v. Three Bros. Bak. Co., Inc.,* 170 Or 345, 349, 133 P2d 597; *Brady v. Schnitzer et al.,* 135 Or 250, 253, 295 P 961. In the Brady case defendant charged the plaintiff, *a pedestrian,* with contributory negligence in that she was under the influence of intoxicating liquor and did not exercise reasonable care to avoid injury. Exception was taken to the following instruction given to the jury:

''If you find from the evidence that the plaintiff was intoxicated at the time she was injured, it will also be necessary for you to find that plaintiff failed to exercise the degree of care that an ordinary pru-

dent sober person would exercise under like or similar circumstances, and that the failure to exercise that degree of care directly contributed to the proximate cause of the injury before you can find plaintiff guilty of contributory negligence.

"If you should find from the evidence that plaintiff had intoxicating liquor on her person or was intoxicated at the time she received the injury, that fact alone does not make plaintiff guilty of contributory negligence."

With regard to this instruction, we said:

"* * * The mere fact, in itself, that she was intoxicated would not preclude recovery unless such condition was the proximate cause of her injury. Regardless of whether or not she was intoxicated, her conduct is to be measured by that degree of care which an ordinarily prudent person of like age and experience would have exercised under similar circumstances. In other words, her conduct is to be tested by the degree of care which a person not intoxicated would have exercised. The rule is thus stated in 45 C.J. 997:

" 'The care required of a person who has become intoxicated voluntarily is the same as that required of one who is sober. If he fails to exercise that degree of care for his safety which an ordinarily prudent sober person would exercise under the same or similar circumstances, and such failure contributes as a proximate cause to the injury of which he complains, he is guilty of contributory negligence'."

■ We here applied a test for contributory negligence on the part of a pedestrian, not on the part of a motor vehicle operator. Whether a child playing in the street, for example, is guilty of contributory negligence is determined from the standpoint of a child of like age and experience; and the conduct of a blind person on the street is tested by that of a reasonably prudent blind person in like or similar circumstances. And a wife

riding in an automobile as a guest of her husband, the driver, when charged with contributory negligence, is to be judged from the standpoint of a reasonably prudent wife riding with her husband under like or similar circumstances. Yet that does not mean that any different test should be applied to one operator of a motor vehicle from that applied to the other. The standard of care to be exercised by each is precisely the same, regardless of age, sex, experience, or mental or physical ability, and, in all cases, the degree of care to be exercised is commensurate with the danger involved.

In *Greenslitt v. Three Bros. Bak. Co., Inc.,* supra, a pedestrian was killed by the operation of a motor vehicle, and the action was brought on behalf of his estate. Decedent was a farmer. His horses were hitched to a drill and left standing in an orchard across the highway from where decedent was conversing with a neighbor. The decedent's horses became frightened by the squeaking brakes of a vegetable truck and started to break away. When decedent saw one of the horses break loose he started to run diagonally across the highway for the purpose of preventing his horses from running away, and he was struck by defendant's motor vehicle when he had reached about the center of the highway. Decedent was charged by defendant with having been guilty of contributory negligence barring a recovery. Mr. Justice BELT, speaking for the court, said:

"We cannot, in the light of the evidence, say as a matter of law that decedent was guilty of contributory negligence. His horses were frightened and one of them had started to run away. What would an ordinarily prudent farmer have done under the same circumstances? When decedent ran across the highway after his horses, he may have failed properly to estimate the speed of the approaching truck. It is presumed that decedent exercised due care to

avoid injury. The evidence tending to show negligence on his part is not of such conclusive character as to overcome such presumption as a matter of law.''

It is manifest that this decision does not support the contention made by plaintiff in the instant case. In that case decedent was not operating a motor vehicle. It is apparent from the record and briefs that what the court said in its instruction about the age, experience, and knowledge of the parties was induced and rendered somewhat necessary by argument of counsel. Under the circumstances, the instruction is neither erroneous nor misleading.

■ As her third assignment of error, plaintiff contends that the trial court erred in giving the following instruction to the jury:

''I spoke of driving on the right hand half of the road; Part of the laws of this state are that upon all highways of sufficient width, other than one way highways, the driver of a vehicle shall drive the same upon the right half of the highway except when the right half is out of repair and for such reason impassable or when overtaking or passing another vehicle. This rule of course does not apply when a person is driving along the road and *there is no other traffic either approaching from an intersection* or from the opposite direction on the highway, but it does apply when the left hand half of the road is being occupied or there is reasonable ground for a person to expect it to be occupied by an approaching car.'' (Italics ours.)

Immediately after giving the foregoing instruction, the court instructed the jury respecting the statutory duty of defendant to stop his vehicle before entering the market road, and to yield the right of way to vehicles approaching on the highway, and then said:

''And of course, that right-of-way was the right of the plaintiff to drive her car along that road

upon the right hand half thereof and would not involve her right to drive over on to the left hand half.''

Section 115-327 (a) and (b), OCLA (ORS 483.302), provides:

''(a) Upon all highways of sufficient width, other than one-way highways, the driver of a vehicle shall drive the same upon the right half of the highway except when the right half is out of repair and for such reason impassable or when overtaking and passing another vehicle subject to the limitations set forth in § 115-331.

''(b) In driving upon the right half of a highway the driver shall drive as closely as practicable to the right-hand edge or curb of the highway except when overtaking or passing another vehicle, or when placing a vehicle in position to make a left turn.''

In the light of the record in this case, it was improper to instruct the jury upon the provisions of the foregoing statute. There is no evidence in the record whatever that would justify such an instruction. The only evidence showing plaintiff to have driven on the left side of the highway was that evidence to the effect that after she had left the pavement on the right side of the highway to avoid striking defendant's car, her car was caused to move back on the highway and swerve to the left side thereof while it was more or less out of control, and before she was able to swing it back to the right and off the pavement. Under the circumstances, plaintiff's being on the left side of the road after having passed defendant's car could not possibly have had anything to do with the proximate cause of the accident.

■ Moreover, we have repeatedly held that the provisions of the foregoing statute do not contemplate strict compliance with it except when a car meets and

passes another coming from the opposite direction. We first stated the rule in *Weinstein v. Wheeler,* 135 Or 518, 529, 296 P 1079, where we said:

> "* * * Rules of the road similar to ours, which require the operation of automobiles upon the right-hand side of the roadway, do not contemplate strict compliance with their provisions except when a car meets and passes another coming from the opposite direction: [Citing cases.]"

In *Hartley v. Berg,* 145 Or 44, 53 25 P2d 932, the foregoing interpretation of the statute was again announced and approved.

In *Spence, Adm'x, v. Rasmussen et al.,* 190 Or 662, 684, 226 P2d 819, after mentioning and approving the interpretation given the statute in the prior cases of *Weinstein v. Wheeler,* supra, and *Hartley v. Berg,* supra, we said:

> "As so construed, the statute applies when vehicles are approaching from the front, not from the rear. The primary purpose of the statute is to provide ample clearance between motor vehicles proceeding in opposite directions."

■ As to vehicles approaching from the rear and overtaking and passing the vehicle ahead, the law imposes a duty upon the driver of the overtaken vehicle to give way to the right, but that is another statute complete in itself and relates solely to overtaking and passing vehicles. § 115-330, OCLA, as amended by ch 198, Oregon Laws 1949 (ORS 483.310).

■ The statute under discussion has no application insofar as vehicles which are approaching a highway from a private roadway and before making the required stop are concerned. However, it might be applicable where such a vehicle had first stopped as required by law and was then in the process of entering the highway. As to such approaching vehicles along the pri-

vate roadway, however, no duty is imposed by the statute in question upon the driver of the vehicle operating along the main highway.

Manifestly, the instructions as given were erroneous, and, in our opinion, the giving thereof constituted prejudicial and reversible error.

As a fourth assignment of error, plaintiff takes exception to the following instruction given to the jury:

"Now as to just where a person driving on a private road toward and upon a public road shall stop, I must instruct you that the law does not specify the number of feet from the *center of the road or edge of the pavement or anything like that,* that the driver of an automobile should stop before proceeding across the highway. The stop would have to be made at a point where the driver could observe the traffic on the highway which might be expected by a reasonable man of ordinary prudence to be affected by an entrance upon the highway and that is the rule which you must apply to this defendant in connection with the operation of his automobile under the circumstances here existing." (Italics ours.)

No doubt the foregoing instruction was based upon the interpretation the trial court placed upon the language used by us in *Cameron v. Goree,* 182 Or 581, 595, 189 P2d 596. Defendant cites that decision in support of his contention that the instruction contains a correct statement of the law. In the Cameron case Mr. Justice Rossman, speaking for the court, said:

"We think that in determining where the stop must be made, all parts of §§ 115-311, 115-337 and 115-351, O.C.L.A., previously quoted, must be considered. It will be recalled that § 115-351 says that the stop markers shall be notice to motorists 'to stop before entering or crossing such designated highways.' Section 115-337 gives us the ultimate

purpose of the stop requirement. It states that after the stop has been made, the driver shall yield the right of way 'to the other vehicles within the intersection or approaching so closely on the through highway as to constitute an immediate hazard.' Obviously, yielding the right of way to cars with which a collision would otherwise occur is the chief objective of the stop requirement. A motorist upon a secondary way must, therefore, do three things: (1) stop, (2) look, and (3) yield the right of way to cars within the range of hazard. *The third duty makes it manifest that the legislature intended that the stop must be made where an adequate view is obtainable. We are convinced that our traffic act means that drivers upon laterals must stop where they can see not only the cars in the intersection,* but also those approaching upon the trunk highway."

Justice Rossman was construing the provisions of § 115-351, OCLA, as amended by ch 428, Oregon Laws 1941 (ORS 483.204), as applicable to the facts in the case under discussion. He quoted the following portion of the statute in question:

" 'The state highway commission with reference to state highways, and local authorities with reference to highways under their jurisdiction, hereby are authorized to designate main traveled or through highways by placing at the entrances thereto from intersecting highways signs or markers notifying drivers of vehicles to stop before entering or crossing such designated highways, * * * and whenever any such signs have been so placed it shall be unlawful for the driver of any such vehicle to fail to stop in obedience thereto, * * *. Such signs and markers shall be placed as nearly as practicable and the stop shall be made at the place where such cross street meets the prolongation of the nearest property line of such through highway.' "

What was said by the court in construing this statute must be viewed in the light of the problem then

before us. As applied to the facts in that case, it was a correct statement of the law. But we were not then dealing with the statute governing entries into a highway from a private roadway, nor are we now concerned with stop signs and the point where a vehicle should be stopped with reference to the location thereof. Of course, insofar as an effective view along the highway is concerned, the same reasoning would apply in this case as was applied in the Cameron case, but the necessity of such a view in either case would not relieve the driver from his statutory duty to stop at least before entering upon the traveled portion of the highway, and there is nothing whatever said in the Cameron case, nor in any other decision by this court, to the contrary. Under the statute in question in this case, defendant was required to stop his automobile before any part of it moved upon or protruded over any portion of the traveled portion of the market road.

In the instruction as given, the trial court fixed the point for the required stop as that point where an effective view might be had, without reference to the specific requirements of the statute. From that charge, the jury may well have been led to believe that defendant had the right to enter upon the traveled portion of the highway before stopping if necessary to obtain a view. The jury was not instructed otherwise. In the light of the evidence in this case, the instruction was incomplete, misleading, and prejudicial. Also, in view of defendant's own testimony on the trial, mention of the ''center of the road'' and ''edge of the pavement'' in the general statement contained in the first sentence of the instruction was improper, particularly when coupled with the language used in the latter part of the charge.

By defendant's own admission on the trial, it appears that he did not stop his automobile until the

front wheels thereof were projected at least one foot beyond the westerly edge of and on the paved portion of the road. By his own admission, therefore, he was guilty of a violation of the statute, and hence guilty of negligence per se. The instruction under discussion furnished him an excuse to which he was not entitled for this negligence on his part.

The judgment is reversed and the cause remanded for a new trial.