Argued October 2, 1957, affirmed January 22, 1958

# NEWBERN *v.* EXLEY PRODUCE EXPRESS CO.

320 P. 2d 678

*Nels Peterson* argued the cause for respondent. On the brief were Peterson & Pozzi, Berkeley Lent, and Gerald H. Robinson, all of Portland.

*Duane Vergeer* argued the cause for appellants. On the brief were Koerner, Young, McColloch & Dezendorf, John Gordon Gearin and James R. Bjorge, all of Portland.

Before PERRY, Chief Justice, and ROSSMAN, BRAND and McALLISTER, Justices.

ROSSMAN, J.

This is an appeal by the defendants, two in number, from a judgment of the circuit court, based upon

the verdict of a jury, which awarded the plaintiff $1,133.34 special and $25,000 general damages. The action, which culminated in the challenged judgment, charged that the defendants negligently drove their combination tractor and freight trailer into collision with the plaintiff's automobile and thereby injured him. The answer attributed contributory negligence to the plaintiff. The defendants are Exley Produce Express, Inc., owner of the tractor and trailer, to which we will hereafter refer as the truck, and Dan C. Arnold, employee of that defendant, who was the operator of the vehicle. Before considering the assignments of error, seven in number, we will take note of pertinent parts of the evidence.

Some of the facts which are applicable to this case are reported in *Newbern v. Exley Produce Express, Inc.*, 208 Or 622, 303 P2d 231. In that case, the plaintiff's wife, who was in the car with him at the time of the collision, was the plaintiff. Her complaint, like the present one, averred that the cause of the collision was the negligent operation of the truck.

The collision occurred March 4, 1952 at noon upon Highway 58. The plaintiff was driving from Klamath Falls to Eugene, and the defendants' truck was proceeding in the opposite direction. The plaintiff's direction was northwest and the defendants' southeast, but for the purposes of convenience we will speak of the plaintiff's as west and the defendants' as east. The place where the collision happened is six or eight miles west of the summit of the Cascades and about 20 miles east of Oakridge. The ground was covered with snow and the pavement was icy.

Before reaching the summit of the Cascades, the plaintiff had driven for many miles upon pavement which was covered with hardpacked snow. Although

his car carried a set of tire chains, he had found it unnecessary to use them. He described his tires as "new, good tires." But after the plaintiff had reached the summit, he found that the roadway became increasingly difficult. At the summit, and especially west of it, the road was covered with frozen snow which afforded tires little traction. Road maintenance equipment had scraped snow from the pavement to the shoulder to the plaintiff's right where it lay in banks, but, nevertheless, the pavement was covered with ice to such a depth that the yellow line which marked the center could not be seen. When the plaintiff encountered the condition west of the summit, he discussed with his wife the question as to whether he should use his tire chains. Believing that the condition was temporary, he concluded to go on, and swore that he reduced his speed to about 22 to 25 miles per hour. He described the course of the highway as slightly downgrade.

After the plaintiff had driven six or eight miles west of the summit, he reached the place where he collided with the truck. The pavement of the highway was about 28 feet broad, but in the vicinity of the accident an additional width was available because provision had been made there for the parking of automobiles and for a turnout into a road which enters Highway 58 at that place. The broader area was to the plaintiff's left. The exact width of the pavement was unimportant, for the road was everywhere covered with ice or snow and the pavement could not be seen. The part of the road at that place upon which cars traveled was extremely slippery. Some of those who attempted to walk upon it fell and others who stopped their cars found it impossible, without the use of chains, to get enough traction to start.

The accident happened near the middle of a section of the pavement, possibly 800 feet long, which makes a broad curve so that the section has the form of the rocker of a cradle. We mentioned the fact that the plaintiff was driving west. Due to the broad swing which the roadway makes to the left, one who is driving westerly, as the plaintiff was doing, is required to turn constantly to the left as he drives along that stretch. Since the defendants' truck was proceeding in the opposite direction, its driver was required to turn to the right upon the curve. When the road was built, provision was made so that the pavement upon the curve was "tilted" in order to facilitate the operation of cars. The witnesses called the sloped, or inclined, pavement a "super." In this stretch of inclined road the southern edge of the pavement is lower than the northern edge. The record warrants a belief that a motorist who drives upon an icy pavement prefers the upper half of the "super." According to the plaintiff, the defendants' truck was operating upon it immediately before the collision.

About 300 feet or so east of the place where the collision occurred the highway passes through a cut. On both sides of the latter, embankments arise which restrict the view ahead of a motorist who is driving westerly, as the plaintiff was doing. The curve in the road, which we have described, begins at the western extremity of the embankments and limits still more the view ahead of a motorist who is driving west. The plaintiff testified that when he was between the embankments he could see no farther down the road than about 600 or 700 feet, and thought that the snow which lay upon the embankments limited his view to even less than that distance. According to him, his speed was 20 to 25 miles per hour in that area. As he approached

the western margin of the embankments, the plaintiff noticed the defendants' truck 600 to 700 feet away, but the curving roadway rendered it impossible for him to determine at that moment on which side of the road the truck was operating. When he was about 500 feet from the truck he discerned, so he said, that it was "on my side and we were headed right together." We quote further from him:

> "I was not giving my car any gas, so there was nothing that I could do except to put my foot on the brake, and the road was slippery so I didn't want to slam my brake on because my experience has taught me to slam your brake on would force me to skid so I pumped the brake * * * to try to slow up the car, and it did, it slowed it up some and I proceeded on my side of the road until I saw the truck and I were going to hit. I didn't want to go over on his side of the road, so, therefore, I stayed in my own lane, I kept thinking that he would get into his lane and when we got so close that I had no chance in the world except to hit him I made for that wide open space."

By "that wide open space" he meant the area to his left which had been provided for the accommodation of those who wished to park their cars or enter the road that branched off at that point. It would have been impractical, according to the plaintiff's belief, for him to have turned to his right because of the wall of snow which the road crews had deposited there. The plaintiff thought that he was no more than 100 feet from the truck when he "made for that wide open space" in his effort to avoid the threatened collision. He asserted that the truck turned from his [plaintiff's] lane at the same moment that he did. The two vehicles collided head-on. When they came to rest, the truck was on its right-hand side of the pavement and the

plaintiff's car was at right angles to the edge of the pavement. The plaintiff swore that the truck shoved it into that position.

A motorist, W. E. Nuser, who claimed that he was following the plaintiff at a distance of 250 feet, testified that the plaintiff drove upon his right half of the roadway and that the defendants' truck was on the same half. He, like the plaintiff, testified that when the two vehicles were close to each other each turned to the other lane and in that way the collision occurred. Testimony presented by the plaintiff indicates that the speed of the truck was about the same as the plaintiff's.

The defendant, Dan C. Arnold, driver of the truck, described his vehicle as 55 feet long and heavily loaded. Its tires were "winterized", so he swore. He had passed a disabled vehicle that stood upon the right half of the pavement when he was about 1350 feet west of the site of the impact, but, if he told the truth, had resumed his half upon passing the disabled car. He estimated that he was 600 to 700 feet from the plaintiff's car when it came into view and, referring to the plaintiff, said, "He was on his correct side of the road." According to Arnold, he, too, was on his proper side of the road and was still there when the collision occurred. He described the plaintiff's speed as "quite fast" and probably about 40 miles per hour. Arnold explained the collision by expressing the belief that the plaintiff lost control of his car. He thought that his own speed was about 12 to 15 miles per hour and that when the impact occurred the truck was standing still. The roadway at that place was "very much upgrade," so Arnold swore. The defendants presented witnesses who testified that they saw the truck approach the site of the collision and that it was then upon its right half. One of them

judged its speed as "roughly three to eight miles per hour" and another as possibly "eight or ten miles." Some of the defendants' witnesses said that the truck was virtually off the traveled part of the roadway when the impact occurred and others thought it was completely off.

The above will suffice for present purposes as a statement of the evidence.

The following is the first assignment of error:

"The court erred in failing to give the following requested instruction:

" 'A. Plaintiff, among other things, has charged that defendants negligently drove said truck on the north side of said highway and on the side which would normally be used by traffic proceeding toward Eugene and by the automobile which this plaintiff was driving.

" 'B. In connection with this charge of negligence made by plaintiff against defendants, I instruct you that rules of the road which require the operation of automobiles upon the right hand side of the roadway do not contemplate strict compliance with their provisions except when a car meets and passes another coming from the opopsite direction.

" 'C. If you should believe from the satisfactory evidence that defendants' truck was being driven on the north side of the highway, such conduct would not constitute actionable negligence, unless it was being so driven while the automobile which plaintiff was driving was approaching from the opposite direction at a reasonably close distance.

" 'D. If you should believe from the satisfactory evidence that the truck of defendants was upon the north side of the highway at a time when the plaintiff had reasonable opportunity to avoid the collision with the means at hand and negligently failed so to do, then in that event, the fact that the truck of defendants was on the north side of the highway

would not constitute the proximate cause of the collision and of plaintiff's injury and damage.' "

Subparagraph B of the above requested instruction is couched in the main in the language of *Weinstein v. Wheeler,* 135 Or 518, 295 P 196, 296 P 1079, which was written in 1931. Oregon Laws 1931, ch 360, repealed § 55-501, OC, which governed *Weinstein v. Wheeler,* and substituted for it the pertinent section of the Uniform Traffic Act. That section, apart from minor changes in its verbiage, is still in effect and is now ORS 483.302. At the time of the accident it read as follows:

"(a) Upon all highways of sufficient width, other than one-way highways, the driver of a vehicle shall drive the same upon the right half of the highway except when the right half is out of repair and for such reason impassable or when overtaking and passing another vehicle subject to the limitations set forth in § 115-331.

"(b) In driving upon the right half of a highway the driver shall drive as closely as practicable to the right-hand edge or curb of the highway except when overtaking or passing another vehicle, or when placing a vehicle in position to make a left turn."

Section 115-331, OCLA, (now ORS 483.308) which is mentioned in the provision just quoted, provided:

"* * * nor shall the driver of a vehicle in any event drive to the left side of the center line of a highway when approaching the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed within a distance of 500 feet, * * *."

Section 115-329, OCLA (now ORS 483.306), in effect when the collision took place, said:

"Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each

giving to the other at least one-half of the main traveled portion of the roadway as nearly as possible."

It is seen from the foregoing provisions that, upon thoroughfares of sufficient width which are not one way, the driver must keep to his right half and "as close as practicable to the right-hand edge or curb" unless he is (1) overtaking or passing another vehicle, (2) placing his car in position to make a left turn, or (3) the right half is out of repair and is impassable. The statutes go on to prescribe that a driver shall not "in any event drive to the left side of the center line of a highway when approaching the crest of a grade or upon a curve  *  *  *  where the driver's view  *  *  * is obstructed within a distance of 500 feet."

Generally, therefore, upon thoroughfares of sufficient width that are not one way, "the driver of a vehicle shall drive the same upon the right half." The general rule recognizes three exceptions, but the latter, as we have just seen, are qualified so that a driver who wishes to get into position for a left turn, or overtake a car ahead, or use the left half because the right is impassable must remain upon the right half if he is approaching the crest of a grade or a curve in the road and his view ahead is obstructed.

The instructions which the trial judge gave to the jury upon the subject matter of assignment of error No. I consisted, in part, of reading to the jury the parts of §§ 115-327 and 115-329, OCLA, above quoted. After the trial judge read those sections, he added:

"I instruct you that a violation of this statute constitutes negligence"

and then explained that the burden was upon the plaintiff to establish that

"such negligence, if any there be, was the proximate cause of the incident with which we are concerned and injury to the plaintiff, if any there be, and thirdly, that the plaintiff was thereby damaged.

\*   \*   \*

"The burden of proof in the first instance in this case is on the plaintiff to convince you by a preponderance of the evidence that the defendants were guilty of negligence and that such negligence, if any there be, was the proximate cause of injury to the plaintiff."

Shortly the term "proximate cause" was defined in the conventional manner. No exception was taken to the instructions just quoted.

Notwithstanding the change which has occurred in the statute concerning operation in the right lane since *Weinstein v. Wheeler* was decided, this court has continued to say that the statute does not require strict compliance. *Nettleton v. James,* 212 Or. 375, 319 P2d 879; *Biddle v. Mazzocco,* 204 Or 547, 284 P2d 364; *Whelpley v. Frye,* 199 Or 530, 263 P2d 295; *Barnes v. Davidson,* 190 Or 508, 226 P2d 289; *LaVigne v. Portland Traction Co.,* 179 Or 221 ,170 P2d 709. After taking note of the statutory provision concerning operation in the right lane, *Barnes v. Davidson,* supra, held that the driver's deviation from that lane does not constitute negligence "when there is nothing to the left which will be affected by the car's presence there."

■ It is clear that the part of the requested instruction which begins with the letter B did not constitute a true statement of the statutory regulations quoted in a preceding paragraph of this opinion. Therefore,

no error was committed when that part of the requested instruction was rejected.

The part of the requested instruction which begins with the letter C treated the operation of defendants' truck in the left lane as not "actionable negligence" unless plaintiff's car was approaching "at a reasonably close distance." Jurors must obtain their knowledge of the law, as afforded by oral instructions, upon the fly and, accordingly, instructions of that kind should be given in terms whose meaning is easy to grasp. The requested instruction uses the phrase "at a reasonably close distance." As that phrase appears in its context, it is capable of puzzling even the members of our profession when they encounter it in written form and can study it at leisure. Unless one is apprised of the purpose to be served by the converse of "a reasonably close distance," he cannot know what was to be expected of the plaintiff, or possibly the defendants, before the available space was reduced to "a reasonably close distance." We must bear in mind that the requested instruction assumes that the defendants' truck was in the same lane with the plaintiff, and that the latter was in his rightful lane. According to the plaintiff and his witnesses, the two vehicles drew within 100 feet of each other when each, in an effort to avoid collision, turned—the plaintiff to his left and the defendant to the right. The trial judge gave to the jury the essence of § 115-329, OCLA, quoted in a preceding paragraph, and thereby told them that drivers of vehicles that are proceeding in opposite directions must pass each other to the right, each giving to the other at least one-half of the main-traveled portion of the roadway as nearly as possible. He also told the jury that the parties were required to act with reasonable prudence, and that no conduct which deviated from

the law's standard became actionable unless it was the proximate cause of the injury for which relief was sought. The situation which was brought before this court in *LaVigne v. Portland Traction Co.*, supra, bears reasonable semblance to the one now before us. In that case, the defendant's bus was in its right-hand lane when it was confronted with the plaintiff's car coming from the opposite direction in the same lane. The bus could not move to its right because, according to the decision, the pavement at that point "was bordered by a two foot ditch and a high embankment." In the present instance, evidence indicates that the plaintiff could not move to his right because of a wall of snow which had been deposited there by the snow removal equipment. The LaVigne decision, referring to the defendant's driver, said:

> "* * * He took the only avenue of escape open, and there would have been no accident but for the unforeseeable action of the LaVigne car, which suddenly changed its course, went back to the side of the road from which it had come, and, without slackening its speed, collided with the bus."

It cited *Weinstein v. Wheeler*, supra, and stated:

> "It seems hardly necessary to add that the statute (§ 115-327, O.C.L.A.), which requires the operation of vehicles on the right-hand side of the highway, has no application in the circumstances of this case."

The requested instruction referred to the plaintiff as the driver who was "approaching from the opposite direction at a reasonably close distance. Had the instruction been given, the jury could have treated it as an intimation from the bench that it was the plaintiff who chose to approach "at a reasonably close distance" and that the duty was upon him to avert the impend-

ing collision. We believe that the requested instruction was confusing and that, under the circumstances, the instructions that were actually given to the jury sufficed. No error was committed when subparagraph C was rejected.

The foregoing analysis, together with the holding in *Rew v. Dorn,* 160 Or 368, 85 P2d 1031, suffices to show that the part of the requested instruction which is marked with the letter D is without merit.

The second assignment of error follows:

"The court erred in failing to give the following requested instruction:

" 'A. Plaintiff, among other things, has charged that defendants drove said truck at a rate of speed which was not reasonable nor prudent under the circumstances and conditions existing at the time and place of said collision.

" 'B. I instruct you there is no evidence to support this charge.

" 'C. Or that the speed of defendants' truck was a proximate cause of the collision.

" 'D. I, accordingly, instruct you to disregard this charge and you are not to consider it in your determination of this case.' "

■■ As is apparent from the foregoing review of the evidence, the jury had a valid foundation for a finding that the defendants' truck was traveling at a speed as high as 25 miles per hour upon the wrong side of an icy, sloping roadway and continued to do so until within 100 feet of the plaintiff's car, which was in its proper lane. The truck was large, heavily loaded and 55 feet long. The facts are important because of the unusual difficulties with which the treacherous pavement threatened the traveler. When we say that due care is dependent upon the attendant circumstances

and must be commensurate with the dangers involved, we need to bear in mind that all facts are not of equal importance. Indeed, they seem never to have been affected by democracy's doctrine of equality. The jury could properly have found, if it believed the plaintiff and his witnesses, that the truck's near approach to him forced him to take a perilous course. A rate of speed which is reasonable for a car traveling upon its proper side of the roadway may be negligent for another which is upon the wrong side and which faces the duty of transferring to the other side upon a slippery pavement or crash into the car ahead. As was said in *Burnett v. Weinstein,* 154 Or 308, 59 P2d 258:

"\* \* \* The mere fact that defendant was traveling not in excess of five miles an hour when struck does not necessarily absolve him from the charge of negligence. Under some circumstances it is negligent to move a car at all."

We think that the evidence presented an issue for the jury as to the reasonableness of the defendants' speed. We find no merit in this assignment of error.

The third assignment of error follows:

"The court erred in failing to give the following requested instruction:

" 'A. Plaintiff, among other things, has charged that defendants drove said truck at a rate of speed which was not reasonable or prudent under the circumstances and conditions existing at the time and place of said collision.

" 'B. If you should believe from the satisfactory evidence in this case that the truck of defendants was at the time and place of the accident on its own right-hand side of the road, then in that event

" 'C. The speed of the truck could not, as a matter of law, have been the proximate cause of the accident and you would disregard the charge of excessive speed.' "

■ It will be recalled that the record contains substantial evidence indicating that when the defendants' truck was 500 feet from the place of the impact it was in the plaintiff's lane and continued to operate there until it and the plaintiff's car were within 100 feet of each other. Then, but not until then, according to the plaintiff, the truck moved over to its proper lane. It will also be recalled that, due to the icy condition of the roadway, the operation of vehicles upon it was difficult and that substantial evidence indicates that the defendants' truck was traveling at a speed of 22 to 25 miles an hour. If the truck did not leave the plaintiff's lane until it was virtually upon the plaintiff, the rule stated in *Erdman v. Inman,* 165 Or 590, 109 P2d 593, upon which the defendants depend to justify this assignment of error, had no bearing. That decision said:

> "Obviously, if defendant had been driving on his right side of the highway, there could have been no collision unless plaintiff drove over onto his wrong side. Under such circumstances, the speed at which the defendant was traveling was immaterial and could not possibly have been the proximate cause of the accident."

In the present instance, if the jury accepted the evidence presented by the plaintiff, the issue of proximate cause was for the jury. We find no merit in this assignment of error.

The fourth assignment of error reads:

> "The court erred in failing to give the following requested instruction:
>
> " 'I instruct you that if you should find from the satisfactory evidence that defendants without any fault or negligence on their part found themselves confronted with a sudden emergency which constituted an imminent danger or peril due to the action of another vehicle, the fact that in attempt-

ing to escape such danger defendants may have done the wrong thing would not of itself render defendants guilty of negligence unless you further find that the actions of defendants at such time and place were not those of ordinarily prudent persons so faced with a like sudden emergency or peril.' "

The trial judge gave the following instruction to the jury:

"You are instructed that the driver of a motor vehicle who is confronted with a sudden and unexpected emergency is not held to the same degree of care in the operation of the motor vehicle as a person who is not confronted with an emergency. He is required to exercise only that degree of care that would be exercised by a reasonably prudent person under the same or similar circumstances."

■ The only material difference between the given and the requested instruction lies in the fact that the former omits the element present in the requested instruction that "defendants without any fault or negligence on their part found themselves confronted" with an emergency. But that error was favorable to the defendants and could not have prejudiced them. We dismiss the assignment of error as lacking in merit.

The fifth assignment of error complains because the trial judge did not instruct the jury:

"A. Plaintiff, among other things has charged that defendants failed to observe the approaching automobile of this plaintiff.

"B. I instruct you there is no evidence to support this charge.

"C. I accordingly instruct you to disregard this charge and you are not to consider it in your determination of this case."

The plaintiff presented no evidence that the defendants "failed to observe the approaching automobile of this plaintiff" unless an inference to that effect is warranted by the fact that defendant Arnold made no effort, according to substantial evidence presented by the plaintiff, to leave the plaintiff's side of the icy roadway until his truck and the plaintiff's car were only 100 feet apart.

If the evidence presented by the plaintiff is true, Arnold's truck was in the plaintiff's lane and was bearing down upon the plaintiff's car upon an icy pavement at a speed as high as 25 miles per hour, and yet made no effort to quit that lane until it had drawn within 100 feet of the plaintiff. From those facts, the jury could have inferred that Arnold could not have been looking ahead, for otherwise he would not have threatened the plaintiff with disaster and injury to his own rig.

■ Whether or not the evidence presented by the plaintiff upon the subject of lookout was truthful was for the jury, which evidently accepted it as true. That being so, we think that the charge that Arnold failed to maintain a lookout was supported by substantial evidence. The assignment of error lacks merit.

The sixth assignment of error follows:

"The court erred in denying the motion for mistrial:

" 'MR. GEARIN: At this time, if the Court please, the defendants and each of them moves the Court for a mistrial based on improper arguments of counsel, specifically referring to the argument made by Mr. Peterson to which an objection was made and sustained by the Court; something that was not made in the heat of passion, and it was

just something that is not based on the record and accuses the defendants of improper conduct which is wholly unsupported and wholly unwarranted.' "

The challenged remark was made by counsel for the plaintiff in his closing argument to the jury. Defendants' counsel construed it as an imputation to the defendants of subornation of perjury. Plaintiff's brief, in explanation of the challenged remark, calls attention to the testimony of one of the plaintiff's witnesses (H. J. Sherman) who came upon the collision immediately after it had occurred and who later signed a statement penned by a representative of the defendants which purported to recount what Sherman had seen. The statement, upon the proffer of the defendants, became an exhibit. The challenged argument is capable of bearing the construction which plaintiff's counsel seeks to place upon it, but evidently the trial judge did not accept that point of view. Following objection by counsel for the defendants, the following occurred:

"THE COURT: The Court agrees. The objection will be sustained.

"MR. GEARIN: May I ask the Court to disregard the comments of counsel.

"THE COURT: The jury is so instructed."

Counsel for the defendants asked for no further action by the trial judge, but later moved for a mistrial. Its denial is the basis of this assignment of error.

We find it difficult to detect anything in the challenged statement which intimated that the defendants had suborned perjury. However, the statement can readily be construed as a charge that the defendants presented evidence which they knew was unreliable. The trial judge, in referring to the statement, termed

it "an unfortunate use of verbiage" and mentioned the fact that it was uttered at the close of "a rather long and arduous proceeding." He expressed the belief that "the jury will not be unduly aroused by such statement."

The trial judge is upon the scene of action and is familiar with what is taking place there. If he is alert, fair and firm, he knows best what measures should be taken to correct the ill effects of a transgression of proper trial tactics. An appellate court must depend largely upon the trial judge's disposition of incidents such as the one now before us. A recent ruling to that effect is *Fowler v. Courtemanche,* 202 Or 413, 274 P2d 258. See, also, *Walker v. Penner,* 190 Or 542, 227 P2d 316; *Poulsen v. Johnson,* 182 Or 297, 186 P2d 521; *State v. Bailey,* 179 Or 163, 170 P2d 355; *Shaw v. Pacific Supply Corp.,* 166 Or 508, 113 P2d 627. It is only in rare instances that this court will substitute its judgment for that of the trial judge and hold that an improper argument demands a reversal. *Bratt v. Smith,* 180 Or 50, 175 P2d 444; *Halton v. Fellows,* 157 Or 514, 73 P2d 680. In the former case, the improper argument attributed to the defendants, who were police officers, the beating to death of prisoners; and in the Halton case, the ill-chosen remarks were repetitious and were made with reiteration. In the case at bar, the instructions to the jury, in referring to the arguments of counsel, termed them "partisan statements" and, after mentioning the attorneys, declared: "You must remember that they are advocates, they are employed to represent a client." We are aware of no reason for believing that the trial judge's disposition of the objection, based upon the improper argument, was not adequate as a corrective measure. We dismiss this assignment as presenting no merit.

The seventh assignment of error reads:

"The court erred in denying the motion for a new trial:

" 'In the alternative and solely in the event the foregoing motion for judgment notwithstanding the verdict is denied, the defendants, and each of them, move the court for an order setting aside the judgment heretofore entered herein in favor of plaintiff and against defendants, and each of them, and granting a new trial to defendants, and each of them, upon the following causes materially affecting the substantial rights of the defendants:

" '(1) Excessive damages appearing to have been given under the influence of passion and prejudice.' "

In support of this assignment of error, the defendants depend upon "the size of the verdict" and the improper argument of plaintiff's counsel of which we have taken notice.

The prevailing opinion in *Van Lom v. Schneiderman*, 187 Or 89, 210 P2d 461, says:

"Since the submission of the case the court has reached the conclusion that it cannot say, either from the size of the verdict itself or from any incident of the trial, that the damages were given under the influence of prejudice and passion."

We have read the record with care and in so doing took careful note of the evidence which reflects the extent of the plaintiff's injury. The damages appear to be adequate for the injury which the plaintiff sustained, but we cannot say that they are excessive. Their size appears to have a reasonable basis in the evidence which was given. We cannot express our reaction to the record better than is suggested by the passage which we quoted from the Van Lom decision. We, therefore, reject this assignment of error.

The above disposes of all of the assignments of error. We have found merit in none of them. The judgment of the circuit court is affirmed.