**Russell ROWE, Appellant,**

v.

**Ruby Ratliff GIBSON, Administratrix of the Estate of Herbert Gibson, Deceased, Appellee.**

Court of Appeals of Kentucky.

Oct. 25, 1957.

Rehearing Denied Feb. 14, 1958.

**174**

Francis M. Burke, Pikeville, for appellant.

Hobson & Stephens, J. P. Hobson, Jr., and Donald Combs, Pikeville, for appellee.

CAMMACK, Judge.

This action was instituted in the Pike Circuit Court by the appellee, Mrs. Ruby Ratliff Gibson. She alleged that the wrongful death of her husband, Herbert Gibson, was caused by the concurrent negligence of Woodrow Hamlin and the appellant, Russell Rowe, in the operation of their respective vehicles. Gibson and Hamlin met death simultaneously when their cars collided about one-fourth of a mile below the mouth of Road Creek near Elkhorn City on Kentucky Highway 80. This appeal is from a judgment in favor of the appellee for the sum of $5,000.

The appellant urges the following grounds for reversal: (1) The evidence was not sufficient to warrant the submission of the case to the jury; (2) incompetent evidence was admitted; (3) Instruction I erroneously assumed that the vehicles driven by Hamlin and Rowe were racing; and (4) the verdict of the jury was the result of passion and prejudice. It is necessary to review the evidence briefly in order to consider properly these contentions.

The testimony of the appellant shows that he had spent the greater part of the afternoon of the day on which the accident happened with Hamlin, in and around Elkhorn City, that they had talked of trading cars and that he had driven Hamlin in his (the appellant's) car. The appellant had drunk two beers in the course of the afternoon and Hamlin had drunk considerably more. In the opinion of the appellant, Hamlin was quite intoxicated. Shortly before the collision the appellant left Hamlin at Rowe's store and started toward Greasy Point on Highway 80. When he had traveled a short distance Hamlin overtook and passed him. About three miles farther down the road the appellant overtook Hamlin who had slowed to about 35 miles per hour and Hamlin waved him around. As the appellant started to pass, Hamlin increased his speed and the appellant had difficulty in passing.

The testimony of two witnesses, who were near the mouth of Road Creek, approximately one-fourth of a mile from the scene of the collision (though one witness placed the distance at one-fourth to three-fourths of a mile), was to the effect that as the cars driven by Hamlin and the appellant passed that point they were "making plenty of speed" or "making good speed." These witnesses said Hamlin was trying unsuccessfully to pass the appellant, his bumper was even with the appellant's rear fender, he was honking his horn, and as the cars passed out of sight Hamlin was gaining on the appellant's car. The appellant, on the other hand, stated that he did not see Hamlin's car again after he passed it, and that Hamlin did not try to pass a second time.

A witness named Bentley saw the appellant's car traveling between 50 and 60 miles per hour on the other side of the place where the collision occurred. Bentley had seen Gibson's Cadillac traveling in the opposite direction at a speed of 40 to 50 miles per hour shortly before the crash. He thought that a greater time elapsed between the passage of the Gibson car and the sound of the crash than elapsed between the sound of the crash and the appearance of the appellant's car. The appellant testified that he passed Gibson's Cadillac, which was traveling 60 to 70 miles per hour about 500 feet from the place where the

accident occurred, but that it was out of sight when the accident occurred. He said also that he neither saw nor heard the crash and that he did not know of its occurrence until some time later that evening when he returned from Greasy Creek.

Bentley, who was evidently the first person to reach the scene, described the condition and position of the wrecked cars. He said the speedometer on Hamlin's car registered about 73 miles per hour while the speedometer on Gibson's Cadillac registered 0. Another witness said the speedometer on Hamlin's car stood at 70 miles per hour. Bentley said also that there were broken beer bottles with the caps still on in Hamlin's car.

There is no indication that the car driven by the appellant came in direct contact with either of the wrecked cars. His alleged liability is based on his failure to yield the right of way to a known drunken driver who was said to be trying to pass him, thereby contributing to the circumstances that caused the drunken driver's car to collide with an oncoming car which, apparently, was being driven with due care on its right side of the highway. Instruction I follows:

"It was the duty of the defendant, Russell Rowe, when he was about to be overtaken and passed by another vehicle to give way to the right in favor of the overtaking vehicle upon audible signal being given by the overtaking vehicle and to give to the overtaking vehicle such assistance as the circumstances shown in the evidence reasonably demanded in order to obtain clearance and avoid accidents.

"If you believe from the evidence that the defendant, Russell Rowe, failed to observe this duty or that he was racing with the car of the deceased, Woodrow Hamlin, and that by reason of such failure of duty, if any, or such racing, if any, the car driven by the plaintiff's intestate, Herbert Gibson, was caused to collide with the car driven by Woodrow Hamlin and that said Herbert Gibson lost his life as a result of such collision you will find for the plaintiff and fix the damages as set out in Instruction No. 3."

The appellant argues that the evidence was not sufficient to warrant the submission of the case to the jury because there is no evidence that his car was at the scene when the collision occurred. He claims that the evidence placing his car in close proximity to the car driven by Hamlin near the mouth of Road Creek (approximately one-fourth of a mile from the scene of the collision) is incompetent because the descriptions of the circumstances are too remote. He points out that his own testimony placed him out of sight of the scene of the collision at the time of its occurrence. He argues further that Bentley's testimony indicated that his car had passed the scene before the collision occurred.

We have held in a case where the speed of a car was the basis of a claim of negligence, that evidence of speed one-fourth of a mile from the scene of a collision should have been excluded. Gauze v. Horn, Ky., 253 S.W.2d 606. The reason for the exclusion is that speed of a vehicle can be changed radically in a short distance and the testimony may be too remote even though the distance involved is not great. In the instant case, however, speed alone is not the basis of the claim of negligence. There is also testimony showing a failure to assist another in passing and a pattern of behavior indicating racing on the public highway. When a pattern of behavior rather than the single factor of speed is involved, testimony of the type found in this case is admissible. See Nichols v. Commonwealth, 291 Ky. 165, 163 S.W.2d 480, where we so held in a case of reckless driving.

It is true that Bentley's evidence concerning the time of the crash and the time the appellant's car passed him could be construed as favorable to the appellant. But when this evidence is con-

sidered along with other evidence in the case it is apparent to us that the question was one for the jury. It was also for the jury to consider what weight, if any, should be given to the speedometer positions mentioned by the witnesses in their testimony relating to the condition of the vehicles after the collision.

 The appellant argues further that Instruction I assumed erroneously that the Rowe and Hamlin autos were racing. We have condemned repeatedly instructions which assume facts which are not in evidence (See Stanley's Instructions to Juries, section 25, p. 47), but we believe that the hypothesis drawn in this instruction containing the fundamental qualification "if any" was amply supported by the evidence. It was in accord with KRS 189.350 as to the appellant's duty, if any, to Hamlin in passing.

We have not considered the prejudicial effect that the closing argument of the appellee's counsel may have had on the jury because the text of the argument, which dealt with Mrs. Gibson waiting for her husband, is not in the record. We believe, however, that the admonition given by the trial court was sufficient.

We do not believe that the evidence as to the speedometer reading of Hamlin's car or the beer bottles in his car was of sufficient weight, even if considered incompetent, to arouse passion and prejudice on the part of the jury. Especially is this true in light of the appellant's testimony that Hamlin was, in his opinion, intoxicated, and also the estimates of other witnesses as to the speed and racing of the vehicles driven by the appellant and Hamlin just before the collision. The verdict reached by the jury is supported amply by the evidence and, considering the small amount of damages awarded, there is no basis for contending that it was the result of passion and prejudice.

Judgment affirmed.