Argued January 10, affirmed March 21, 1962

# CITY OF PORTLAND *v.* THERROW ET AL
369 P. 2d 762

*Oliver I. Norville,* Portland, argued the cause for appellant. With him on the brief was Malcolm J. Montague, Portland.

*Alton John Bassett,* Portland, argued the cause and filed a brief for respondents.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Lusk, Justices.

## PERRY, J.

Plaintiff brought this action to acquire by eminent domain all of the real property of the defendants located on S. W. First Avenue between Grant and Sherman Streets in the city of Portland. This property is being taken as a part of the city's program on

Urban Renewal, and consists of a concrete building and the land upon which it is situated. The plaintiff appeals from the judgment fixing the compensation to be paid to defendants.

Plaintiff's first assignment of error is that the court erred in not sustaining its motion to strike certain testimony for the defendants on the basis that the method of valuation used by the expert witness for the defendants was improper. In this connection the record is as follows:

"Q Would you figure the total reproduction cost based on those figures for me, please?

"A The total reproduction costs?

"Q Well, yes, on the basis of figures which you have given. $5 per square foot and three thousand—

"A Yes. (Witness computing on paper) It would be $18,600.

"Q Now, what depreciation factor did you apply to that?

"A I didn't apply a depreciation factor to that. I didn't use that—I didn't take a $12 figure and the year and depreciate it. The number of years— I didn't say that I used that method.

"Q Maybe I misunderstood your whole testimony. I understood that we were talking about how much it would cost to reproduce that building using present building methods and standards to achieve the purpose for which the building is presently used, a brand-new building. I understood on that basis that you declared it to be $5 per square foot plus the balconies.

"A You mean to use, for example, concrete blocks?

"Q Yes.

"A Well, I think you are putting words in my mouth.

"Mr. Bassett: He is mistaken your Honor. He said twelve—

"The Witness: I said a poured-concrete structure as the way this building is built—to build it on today's market it would cost you $12 a square foot to reproduce this.

"Q (By Mr. Norville) If you were to reproduce this building today would you pour two-and-a-half-foot concrete walls?

"A No, sir, I would not. I would not.

"Mr. Norville: Well, your Honor, I move the testimony be stricken. In connection with this reproduction-cost method, it is wholly improper.

"The Court: He didn't say he used reproduction-cost method. I believe that this value of $5 a foot plus $2 for the balcony—I am not sure how he arrived at it. If you want to ask him all right.

"Mr. Norville: Well, your Honor, he just indicated that he used a $12 a square foot reproduction cost to reproduce it in terms of concrete walls. He then stated, I believe, and I certainly don't want to put words in the witness' mouth—

"Mr. Bassett: You are doing it, though.

"The Court: Well, let him finish.

"Mr. Norville: If I am being unfair—

"The Court: If you are I will tell you. Go ahead. (Laughter)

"Mr. Norville: All right. That is what I want you to do. And then I understand that he said that if he were reproducing that building today he would not build two-and-a-half-foot concrete walls. Consequently he applied an improper method to determine the reproduction cost. It is wholly improper. He said that he wouldn't use that method.

"The Court: How did you arrive at the value that you put on this building? Forget about the land. The present-day value?

"The Witness: Well, I—

"The Court: By depreciating $12 a foot?

"The Witness: No. There is another method of appraisal, your Honor, which I think is perfectly legitimate and that is the intuitive method. I have been selling real estate for twenty years and I can tell you very closely what fair market value is.

"The Court: You arrived at this by intuition? Just intuition based on your experience?

"The Witness: Yes, I think that I can arrive at a fair market value for what I could sell the property for. That is what I was trying to answer.

"The Court: I think that answers it. Do you have any further cross-examination?

"Mr. Norville: Yes. Do I understand that my Motion has been overruled to strike the testimony in connection with the use of the reproduction—

"The Court: He didn't use a reproduction figure. He stated in answer to a question that it would cost $12 a foot to pour concrete a foot-and-a-half thick or a foot thick or whatever it was, but he said that he wouldn't build a building that way. That ends that testimony."

It will be noted that the objection of the plaintiff relates to the use by the witness of a reproduction cost method in placing a value upon the building. However, the witness stated that he did not arrive at his computation by using a reproduction cost method. We believe the only fair interpretation of this witness's testimony as set out is that he, being a real estate dealer, believed he had a general knowledge of the subject and a general knowledge of the value of business property and, without using any of the generally applied methods but relying upon his judgment, he could arrive at the fair cash value of the concrete building.

The fact that the witness, because of his ex-

perience, relied upon his intuition for his judgment as to value could only go either to his qualifications to express an opinion or to the weight to be given to his testimony by the jury. No motion of any kind was made in the trial court which would raise the question of his qualification. Such an assignment of error will not be considered for the first time in this court. *Douglas County v. Meyers et al.*, 201 Or 59, 268 P2d 625.

Plaintiff's second assignment of error is based upon the following:

"Q (By Mr. Norville): Are you familiar with the fact that this 50-by-106½ foot lot sold on October 7, 1958, the sale being between one Catherine Schultz to the Portland Area Council of Boy Scouts of America for 6500—

"Mr. Bassett: I object to that, your Honor. 1958—they are well into this Urban Renewal. Of course, it was announced in 1955 and would affect any sales since then.

"The Court: Well, it is a sale between a willing buyer and a willing seller in the area. There is nothing to prevent anybody from buying and selling there. On the other hand—

"Mr. Bassett: Well, it is a condemned—

"The Court: Just a moment. Let me think— Didn't you make a statement that the Boy Scout Building was excepted from this?

"Mr. Norville: Yes.

"The Court: Was that by virtue of some special arrangements?

"Mr. Norville: Yes, pursuant to the redevelopment—

"The Court: Well, is it possible that those arrangements were made known to the party at the time of the deal? In other words, can you truly

say that this transaction would be a transaction in the normal course of business without having any unusual factors? I think that we had better leave that one out. I will sustain the objection on that."

■ Evidence of voluntary sales of similar property in the vicinity of the property sought to be taken is always admissible as independent evidence of the value of the property in question. *Coos Bay Logging Co. v. Barclay,* 159 Or 272, 79 P2d 672; *State Highway Commission v. Parker,* 225 Or 143, 357 P2d 548. It would also then, for the purpose of testing the value or weight to be given to the opinion of an expert witness on value of real property, be proper to inquire as to his knowledge of voluntary sales of comparable property in the vicinity of the property about which he has expressed an opinion.

■ The question as asked of the witness, however, was improper. It goes beyond asking if he is familiar with a certain sale; it informs the jury of a purported sale at a particular price without any foundation in the evidence that the property is at all similar for comparative purposes.

We are well satisfied that the question asked was prompted by no improper motives; nevertheless there is a vice in such questions that tends to leave an impression with the jury that a fact or state of affairs, which has not and perhaps cannot be proven, does in truth exist. Such questions are erroneous and should not be asked by counsel.

■ While the record above would indicate that the trial court did not sustain the objection upon the grounds we have set out, nevertheless its ruling was correct and no error could be predicated thereon.

■ In any event, had the question been proper, the plaintiff was not prejudiced for the witness stated he

had not informed himself of recent sales in the vicinity of the defendants' property.

The plaintiff also assigns as error denial of its motion for a new trial on the ground that the evidence of value is insufficient to justify the verdict.

■ This court will not, except in specific instances not here present, review as an appealable matter the denial of a motion for a new trial. ORS 19.010; *Macartney v. Shipherd,* 60 Or 133, 117 P 814; *White v. Geinger,* 70 Or 81, 139 P 572.

The judgment of the trial court is affirmed.