Argued September 10, reversed and remanded October 13, 1965

# ROGERS *v.* GREEN ET AL

406 P. 2d 553

*Glenn R. Jack,* Oregon City, argued the cause for appellant. With him on the brief were Jack, Goodwin & Anicker, Oregon City.

*Edwin J. Peterson,* Portland, argued the cause for respondents. With him on the brief were Arden E.

Shenker and Tooze, Powers, Kerr, Tooze & Peterson, Portland.

Before McALLISTER, Chief Justice, and PERRY, DENECKE, LUSK and SCHWAB, Justices.

SCHWAB, J. (Pro Tempore)

Plaintiff appeals from judgment entered on verdict for defendants in a personal injury case. She assigns as error the trial court's failure to submit to the jury her allegation that the defendants had failed to keep a lookout.

This action arose out of a passenger car-truck collision in which plaintiff was a passenger in an automobile driven by her husband. Defendant Green was driving a truck as an employee of defendant Safeway Stores, Incorporated. The accident occurred on a sunny day on highway 212 in Clackamas county near the point where highway 224 merges into it. Viewing the area pertinent to this case we find that highway 212 runs in a substantially straight line and in an easterly direction for over 700 feet to the point where it is entered from the southeast at approximately a 45° angle by highway 224. From this point highway 212 curves very slightly to the south and starts up grade. Duly posted stop signs require traffic on highway 224 to stop before entering highway 212. As defendant Green was driving the Safeway truck east on highway 212 at a point at least 275 feet from its intersection with highway 224, the automobile in which plaintiff was a passenger was at the front of a string of vehicles stopped on highway 224 at the stop sign preparatory to entering the west bound lane of highway 212. As the truck drew closer, defendant Green

saw plaintiff's car entering the intersection whereupon he honked his horn, swerved and braked in a futile effort to avoid a collision. Neither the husband, nor plaintiff, nor plaintiff's daughter who was also riding in the automobile were aware of the presence of the truck until an instant before impact.

■ In addition to other allegations of negligence, plaintiff's complaint charged the defendants with failure to maintain a lookout, failure to keep control, and excessive speed. The trial court submitted "control," and "speed," but withdrew "lookout." Defendants concede that there was evidence requiring the submission of "speed" and "control" to the jury, but contend that there was no evidence of inadequate "lookout." We cannot agree.

Searching the record, as we must, for evidence to support plaintiff's position, we find testimony that Green was going 55 miles an hour at a point less than 300 feet from an intersection which he knew to be dangerous. At this point he observed a string of cars stopped at the stop sign, and nothing thereafter occurred to obstruct his view of them. The evidence indicates that there were at least four vehicles in this line, one of which was pulling a 15-foot trailer. The plaintiff's automobile was at the front of this line. Defendant Green on direct testimony says that when he was halfway across the bridge west of the intersection he first realized that plaintiff's car was coming out in front of him. This point is over 200 feet west of the intersection. From his own testimony on cross-examination the jury could have inferred that from the time he first observed the vehicles at the intersection his watch over them was intermittent.

"Q You were about at the westerly end of that

bridge when you looked and saw the Rogers car stop here at this rubberplated stop sign (indicating)? I think that's your testimony. If it isn't, why you just tell me.

"A I am not positive just where I was at. I say approximately.

"Q You were about at the end of this, the west end of this bridge?

"A Yes.

"Q In other words, from that point you had the bridge to cross and then the distance to go from the end of the bridge to the stop sign, and you saw that Mr. Rogers was stopped?

"A I don't know whether it was Mr. Rogers' car. I had seen a string of cars.

"Q Yes, but is it the car that you later collided with that you saw stopped?

"A I presume it was. I wouldn't say definitely."

The nature and extent of lookout required varies with circumstances.

"* * * A motorist is required to keep a reasonably continuous lookout but is not required to continuously look for danger from a particular area unless under similar circumstances such a lookout would be maintained by a reasonably prudent person." *Phillips, Gdn. v. Creighton, Adm.,* 211 Or 645, 652, 316 P2d 302.

Here the jury could have found that the defendant, approaching within 275 feet of a known dangerous intersection at a speed of 55 miles per hour, should have maintained a continuous "look" at a vehicle he saw poised to enter his path. This case comes under the rule laid down in *Nicholas v. Fennell,* 184 Or 541, 199 P2d 905, quoted at length in *McReynolds v. Howland,* 218 Or 566, 346 P2d 127, and reiterated in a

recent case involving a somewhat similar fact situation, *Troupe v. Ledward,* 238 Or 531, 536, 395 P2d 279, in which this court, speaking through Rossman, J., stated:

"Speed, control, and the duty to maintain an adequate lookout are interrelated. As speed increases, the duty to be alert and have one's automobile under adequate control increases. Accordingly, when the plaintiff entered the intersection at an impressive speed and saw two cars waiting to enter and also saw three cars approaching from the opposite direction, it was her duty to be alert and maintain a reasonably adequate lookout. Whether her lookout which did not observe the defendant's car until she was entering the intersection and which did not see it again until an instant before the collision was adequate was a jury question."

Defendants cite several opinions of this court as supporting the proposition that "speed," "control" and "lookout" are not indivisible. An examination of these and other decisions of this court show that this is true only in exceptional circumstances. Further, in only one case, *Layne v. Portland Traction Co.,* 212 Or 658, 319 P2d 884, 321 P2d 312, has this court held that where there was evidence to go to the jury on speed and control, lookout should not have been submitted.

*Lemons v. Holland,* 205 Or 163, 284 P2d 1041, 286 P2d 656; *Tuite v. Union Pacific Stages, et al,* 204 Or 565, 284 P2d 333; *Owens v. Holmes,* 199 Or 332, 261 P2d 383; *Wilson v. Overbey,* 223 Or 256, 354 P2d 319, deal with situations which disclosed no evidence of negligence supporting any of the three interrelated allegations, improper lookout, excessive speed, or lack of control.

*Krening v. Flanders,* 225 Or 388, 358 P2d 574, also cited by defendants, like *Johnson v. Bennett,* 225 Or 213, 357 P2d 527, involved a withdrawal of "speed" from the jury. The *Krening* decision points out that there had been a proper instruction on control which covered the interrelation of speed and control. Similar language appears in the *Johnson* decision.

■ The fact that a rule may have an exception makes it no less a rule of general application. Where the trinity "speed," "control" and "lookout" are alleged and there is evidence of negligence sufficient to raise a jury question, it is only the uncommon fact situation which will justify submitting to a jury less than all three—and only the most uncommon situation will justify severing "lookout." "Lookout" by its very definition is of the three the least subject to proof by direct evidence. Almost always the extent of lookout must be inferred from other facts, and its adequacy must be determined in relation to "speed" and "control." It is difficult to conceive of many situations in which, given allegations of improper speed, control and lookout and given a jury question as to negligence, it would be error to submit all three to the jury.

*Layne v. Portland Traction Co., supra,* involved a motor vehicle-locomotive collision. Historically, standards applicable to collisions involving motor vehicles only have differed from those applicable to motor vehicle-train collisions. In recent years this distinction has been diminished. Whether or not the decision in the *Layne* case as to the evidentiary requirements necessary for proof of inadequate lookout will continue to be the standard in situations involving railroad trains need not be considered here. It does not set

out the standard to be applied to motor vehicle collisions.

Defendants urge that if it was error to withdraw "lookout," it was harmless "because speed and control were the heart of plaintiff's case." Lookout was no less fundamental and its withdrawal may well have prejudiced the jury's evaluation of plaintiff's case.

Plaintiff's other assignment of error deals with the trial judge's refusal to give a cautionary instruction for which there was not a timely request. This problem is not likely to repeat itself on retrial so no useful purpose would be served by discussing it here.

Reversed and remanded.