Argued April 6, affirmed October 19, 1972

CARTER, *Appellant, v.* MOBERLY ET AL,
*Respondents.*

501 P2d 1276

*John J. Haugh,* of O'Connell, Goyak, Haugh &

Loew, Portland, argued the cause for appellant.

*Paul D. Clayton,* of Luvaas, Cobb, Richards & Fraser, Eugene, argued the cause and filed a brief for respondent Frisk.

*Paul E. Geddes,* of Geddes, Walton & Richmond, Roseburg, argued the cause and filed a brief for respondent Moberly.

McALLISTER, J.

The plaintiff, David Carter, brought this action to recover damages for personal injuries sustained in a three-vehicle collision on Highway 38 between Drain and Reedsport. Plaintiff was driving an unloaded cab-over-engine flatbed truck and trailer east toward Elkton. The defendant, Roy Frisk, was driving west in a Pontiac car towing a 20-foot travel trailer. Walter Moberly was driving a Jeep pickup following the Frisk trailer. On a straight stretch of two-lane highway about seven miles west of Elkton plaintiff's truck collided with the side of Frisk's trailer and then with the Moberly Jeep. Plaintiff was injured and Moberly was killed.

The crucial factual issue at trial was whether the plaintiff's truck or the Frisk trailer was on the wrong side of the center line. Plaintiff testified that he was in his proper lane and that the Frisk trailer swayed across the center line and struck the cab of his truck and that the Moberly Jeep at about the same time turned into the eastbound lane striking the truck head on. Mr. and Mrs. Frisk testified that plaintiff's truck "drifted" across the center line into their lane, that

plaintiff's truck did not hit their car, but the truck cab collided in a glancing manner with their trailer and then hit nearly head-on with the Moberly Jeep. Parts of the Frisk trailer and much of its contents as well as other debris was strewn on the highway. The jury returned a verdict in favor of both defendants and plaintiff appeals.

The first assignment of error is the trial court's exclusion of evidence concerning Moberly's operation of the Jeep pickup some distance before it arrived at the scene of the accident. Plaintiff's complaint alleged that after Frisk's trailer collided with the cab of plaintiff's truck "defendant Moberly, either to avoid the debris from the trailer, or in an attempt to pass the Frisk vehicle, swerved into the eastbound lane" striking plaintiff's truck. Plaintiff alleged that Moberly was negligent in driving across the center line into plaintiff's lane of travel, in failing to keep a proper lookout, and in failing to keep his vehicle under proper control. This assignment of error is based on plaintiff's attempt to show that Moberly was engaged in a continuous course of negligent conduct and was probably trying to pass the Frisk vehicle at the time of the accident. Plaintiff's offers of proof, summarized, are as follows:

Gary Kuykendall testified that on the day of the accident he was driving an 80 to 85 foot truck, loaded with poles and piling, westerly on Highway 38. At a point about five miles east of Elkton (thus about 12 miles east of the scene of the accident), when he was going about 50 or 55 miles per hour, Moberly's Jeep passed him as they left a tunnel and approached a blind corner. The Jeep was going about 60 to 70 miles an hour, and pulled back into its own lane within fifty feet of the curve. Kuykendall testified that after it

passed him the Jeep continued ahead at the same speed until it was out of sight, approximately sixty seconds.

Patrick McMartin testified that he, too, was driving westerly on the day of the accident in a truck and log trailer, loaded with 100-foot piling. At a place about three miles east of Elkton (ten miles from the accident scene), as he was driving up the "Elkton grade" at a speed of about 22 miles an hour, Moberly's Jeep passed him at the "next to the last turn to the top." The highway consisted of two lanes at that point, the Jeep was traveling 55 to 65 miles per hour or more, and visibility where the Jeep passed was a maximum of 100 feet. McMartin also testified that on the way up the hill he had observed the Jeep pass other cars behind him, and that the road coming up the hill winds so that there is no place to pass with "complete visibility."

After the Jeep had passed McMartin's truck, McMartin saw it following the Frisk vehicle within a mile of Elkton and he saw the Jeep "duck out" from behind the trailer in an attempt to pass. However, Frisk testified, without contradiction, that he had observed the Moberly vehicle following him for about three or four miles before the accident, and that during that time Moberly followed at a safe distance and never attempted to pass, although Frisk's speed was only about 35 miles per hour.

Marion Jewett testified that he saw the Jeep pickup on the outskirts of Elkton, where it passed him on a straight stretch going down a hill. Jewett was driving a pickup at about 45 miles per hour, and the Jeep as it passed was going 55 to 60 miles per hour. This incident took place about five minutes before Jewett arrived at the accident scene.

Plaintiff offered the above evidence to corroborate his testimony that the Jeep pulled out into plain-

tiff's lane, and argues that the jury could have inferred from the rejected evidence that Moberly was in fact attempting to pass the Frisk vehicle at the time of the collision.

■ Since Jewett's testimony does not show any negligent or unsafe passing by Moberly we are concerned only with the trial court's rejection of the evidence of Kuykendall and McMartin. The trial court excluded their testimony under the general rule that evidence of negligence at some other time and place is inadmissible to prove negligence on the occasion in question. *Warner v. Maus,* 209 Or 529, 534, 304 P2d 423 (1957). The court held that the evidence did not sufficiently demonstrate a continuous course of conduct continuing up to the time of the accident, in order to come within a recognized exception to the general rule. Plaintiff argues that the evidence was sufficient to show a pattern of negligent driving, and that its exclusion was reversible error.

In cases involving allegations of excessive speed, we have held admissible evidence of speed at various distances from the accident, provided there was sufficient evidence to indicate that the speed continued up to the time of the accident. *Shoopman v. Long,* 252 Or 341, 449 P2d 439 (1969) ; compare *May v. Mack,* 225 Or 278, 356 P2d 1060 (1960). In those cases we said that the admission of such evidence is within the trial court's discretion. See, also, *Hanson v. Schrick,* 160 Or 397, 401, 85 P2d 355 (1939). In this case plaintiff has not charged Moberly with excessive speed. It has been commonly held by other courts, however, that the admissibility of evidence of a party's negligent driving at places more or less remote from the accident is a matter for the trial court's discretion. See Annotation, 46 ALR2d 9.

Plaintiff argues, however, that in *Shoopman v. Long,* supra, this court abandoned the rule leaving the admission of such evidence to the trial court's discretion. In *Shoopman* we said:

"This court has followed the rule that admissibility of evidence of speed at some point other than at the scene of an accident is within the trial court's discretion. * * * The discretion mentioned in the cases should be more accurately described as the process of judging the offered evidence in its relationship to all of the evidence relative to speed. If it fits into a pattern with the other evidence and shows continued speed it should be admitted. If the evidence stands alone, as in *May v. Mack,* supra, it should be rejected. * * *" 252 Or at 342-343.

The language quoted indicates that in *Shoopman* we did not intend to change the rule, but to clarify it. More recently, in *Yundt v. D & D Bowl, Inc.,* 259 Or 247, 486 P2d 553, 558 (1971), we struggled again with the meaning of "discretion" in the context of a ruling on evidence:

"Generally, when appellate courts speak of the discretion of a trial judge, they refer to an exclusive power of free decision not revisable or reviewable by an appellate tribunal in the absence of abuse. * * *

"However, this cannot be the meaning of the term 'discretion' when a judge is faced with a decision whether to admit certain testimony of an expert after he has been deemed qualified. At this point, he must apply certain principles of law to his decision and he is not free of revision or review. In the case at bar, it was not singularly a matter of discretion, but a question of law calling for an application of a rule of law to a particular set of facts. The true meaning of 'discretion,' when applied to the exclusion or admission of testimony from an expert witness, would be *the power to make a choice*

*from two or more legally valid solutions if sup-
ported by the facts. * * * When faced with an
offer of proof, which may or may not be appropriate
for jury consideration, the trial judge may, in cer-
tain circumstances, either admit or exclude the prof-
fered testimony if he applies the correct principle
of law and does not abuse his discretion." (Em-
phasis added.) 486 P2d at 558.*

■ ■ In this case, the evidence in question was ob-
jected to as being too "remote." Such an objection
requires the trial judge to assess the probative value
of the proffered evidence, and to weigh the probative
value against various considerations which may mili-
tate against admissibility, such as undue prejudice, in-
troduction of collateral issues, consumption of undue
time, or unfair surprise to the other party. McCormick
on Evidence (2d ed 1972), 439-440, § 185. If he finds
the evidence to have no probative value, he must ex-
clude it. If, on the other hand, it does tend to establish
a fact in issue, and no contrary considerations are
present in the particular case, the evidence must be
admitted. Between these two extremes, however, is an
area in which further judgment must be exercised. If
the evidence has some probative value, but also pre-
sents difficulties such as those mentioned above, the
judge must determine whether the value of the evi-
dence outweighs, or is outweighed by, the offsetting
considerations. We sometimes call the exercise of this
kind of judgment "discretion." Its exercise requires the
judge to weigh the value of the evidence in light of all
the circumstances of the particular case, and his con-
clusion, if it is reasonable, will not be disturbed on
appeal. Precedent is of little value in reviewing such
cases, because even when cases involve similar issues
and similar types of evidence, the other factors which

may properly influence the trial court's ruling are highly variable.[1] We simply determine whether, on the facts of the particular case, the trial court's ruling was within the reasonable or permissible range. We need not determine whether his ruling was the only one possible. It may be that the record will support either admission or exclusion; if so, the trial court's ruling will be affirmed, regardless of which solution we would prefer.

A recent example is *Byrd v. Lord Brothers,* 256 Or 421, 473 P2d 1018 (1970) in which we upheld the admission of evidence with relatively slight probative value. We pointed out there that "[w]hen the offered testimony gets to the outer fringes of relevancy, courts allow the trial judge a certain amount of leeway in evaluating its admissibility." 256 Or at 426. We have taken a similar approach to evidentiary rulings which rest on relatively complex factual determinations. For instance, in *Zeller v. Dahl,* 262 Or 515, 499 P2d 1316, 1318 (1972) we said:

"These various facts may not have been suffi-

---

[1] The following discussion by Wigmore, involving a specific rule of evidence, is also appropriate here:

"Rulings upon this limitation should not in strictness be given the force of precedents. To argue from one case to another on this question of 'time to devise or contrive' is to trifle with principle and to cumber the records with unnecessary and unprofitable quibbles. There is a lamentable waste of time by Supreme Courts in here attempting either to create or to respect precedents. Instead of struggling weakly for the impossible, they should decisively insist that every case be treated upon its own circumstances. They should, if they are able, lift themselves sensibly to the even greater height of leaving the application of the principle absolutely to the *determination of the trial Court.* * * *" 6 Wigmore on Evidence (3d ed 1940) 154, § 1750.

(To the advice in the final sentence above, this court has replied "We are not able." Bosin v. Oak Lodge San. Dist., 251 Or 554, 564, note 1, 447 P2d 285 (1968).)

cient to *require* a finding by the trial court that the statement in question did not qualify as an 'excited utterance' or 'spontaneous statement.' Because of such facts, however, we hold that the exclusion of such testimony by the trial court was not an abuse of the 'considerable lee-way of decision' that we have recognized in such cases, with the result that it was not error to sustain defendant's objection to the offer of such testimony."

See McCormick, op. cit. supra at 121-122, § 53.

In more complex cases, which present a number of interrelated factors for the trial court's consideration, the "lee-way" allowed should be correspondingly greater. This is a fairly complex case. The testimony of Kuykendall and McMartin had some probative value; that is, it had some tendency to establish that Moberly was inclined to pass other vehicles under possibly unsafe conditions during the trip involved in the case. However, Frisk's uncontradicted testimony was that after he passed Elkton, and especially during the three or four miles just before the accident, Moberly followed the Frisk vehicle at a relatively slow speed and made no attempt to pass. Also, if the testimony of Kuykendall and McMartin had been admitted for the jury's consideration, it could have consumed the court's time in the trial of collateral issues such as the identity of the Moberly vehicle, the similarity of the road and traffic conditions, and the accuracy of the witnesses' observations and reporting. Moreover, it might well have been given undue weight by the jury. The trial judge could reasonably conclude that these dangers outweighed the limited probative value of the testimony. And where, as here, we cannot say that the trial judge's ruling was erroneous and prejudicial, we will not reverse even though the reasons

given by the trial court for his ruling are not the reasons upon which we rely. *Rader v. Gibbons and Reed Company,* 261 Or 354, 494 P2d 412 (1972); *City of Portland v. Therrow,* 230 Or 275, 369 P2d 762 (1962); *Riley v. Good,* 142 Or 155, 158, 18 P2d 222 (1933).

■ Plaintiff next assigns as error the trial court's denial of his motion to strike from Moberly's affirmative answer an allegation that plaintiff operated his truck at an excessive speed. Plaintiff argued that because the real issue in the case is which party or parties were on the wrong side of the road, plaintiff's speed, even if excessive, could not have been a proximate cause of the accident. He cites *Furrer v. Yew Creek Logging Co.,* 206 Or 382, 292 P2d 499 (1956) and *Erdman v. Inman,* 165 Or 590, 109 P2d 593 (1941). Neither of those cases holds that it is error to submit the issue of speed to the jury when there is a dispute as to which vehicle was on the wrong side of the road. They simply point out that, under certain circumstances, an erroneous or abstract instruction on the issue of speed may not be prejudicial. In *Erdman,* in fact, the opinion points out that the speed of the party who is on the wrong side of the road is a proper consideration for the jury.

> "If defendant was driving on the wrong side of the road, the speed at which he was traveling would be important in determining the proximate cause of the accident." 165 Or at 592.

The general rule applicable to motions to strike or to withdraw from consideration by the jury of one or more elements of the interrelated questions of speed, lookout and control is succinctly stated in *Rogers v. Green,* 241 Or 435, 440, 406 P2d 553 (1965), as follows:

> "* * * It is difficult to conceive of many situa-

tions in which, given allegations of improper speed, control and lookout and given a jury question as to negligence, it would be error to submit all three to the jury."

This is certainly not one of the unusual situations in which the court should have withdrawn from the jury the issue of plaintiff's speed.

It is well to bear in mind that the motion to withdraw asked the court to hold, taking into consideration all the evidence, that plaintiff, as a matter of law, was not guilty of excessive speed or that his excessive speed was not a proximate cause of the collision. *Rough v. Lamb,* 240 Or 240, 243, 401 P2d 10 (1965). This the court obviously could not do in this case. After the initial collision between plaintiff's truck and the Frisk trailer the truck crossed the highway and came to rest on the north side. It was after the initial crash that the truck and Moberly's Jeep collided. The jury could have found, inter alia, that the speed of plaintiff's truck was a contributing cause of plaintiff's failure to keep his truck on the right side of the road after the initial crash.

We have approved the submission of the issue of speed in other cases involving collisions between vehicles traveling in opposite directions. *Newbern v. Exley Prod. Exp. Co.,* 212 Or 458, 320 P2d 678 (1958) involved a head-on collision where each party claimed the other was in the wrong lane at the time of the accident. Plaintiff also charged defendant with excessive speed. The court held it was not error to refuse to withdraw this allegation from the jury, pointing out that an otherwise reasonable rate of speed may be excessive when the vehicle is in the wrong lane and is approaching another vehicle. The opinion distin-

guishes the *Erdman* case and holds that because there was substantial evidence that defendant was in the wrong lane, the issue of proximate cause was for the jury.

In *Moe v. Alsop*, 189 Or 59, 216 P2d 686 (1950) defendant objected to the submission to the jury of plaintiff's allegations of negligence in speed, lookout, and control, because it was plaintiff's basic theory that the accident was caused by defendant's driving on the wrong side of the road. The court said:

> "It would seem, however, that the jury may have found that driving on the wrong side of the highway was not in itself the proximate cause of the collision. Notwithstanding defendant's negligence in driving on the wrong side of the highway, it should be apparent that the collision might have been avoided if defendant had exercised due care in the other respects mentioned. Any or all of the acts of negligence charged—lack of control, lack of lookout, and speed—together with negligence in driving on the wrong side of the highway, singly or in combination, may have been the proximate cause of the accident. * * *" 189 Or at 73-74.

In the present case, the evidence was conflicting as to whether plaintiff was in his own lane at the time of the initial collision or had "drifted" across the center line when the collision occurred. Frisk testified that plaintiff's truck drifted across the center line as it came around a curve some 430 feet west of the point of initial impact and that when he finally realized that the plaintiff was not going to turn back to his own side of the road Frisk attempted to avoid the collision by trying to get his car and trailer as far to his right as possible. The speed of the truck had an important bearing on Frisk's ability to take evasive action and had a direct bearing on the issue of proximate cause. The

*Newbern* and *Moe* cases are in point here and under the rule of those cases submission of the issue of plaintiff's speed to the jury was proper.

■ Finally, plaintiff contends that the trial court erred in refusing to allow his expert witness to testify, in effect, that the location of the debris resulting from the collision of moving objects which thereafter continued to move is an unreliable indicator of the initial point of impact of the two objects. According to plaintiff, the jury, in determining which vehicle was on the wrong side of the road, had to rely heavily on circumstantial evidence, including "the condition of the vehicles, their location after the accident, markings on the roadway, the physical characteristics of the roadway, and the debris from the impact." Much evidence was introduced by defendants to establish the location of the debris which plaintiff concedes was nearly all on defendant's side of the road.

Plaintiff called as an expert witness Dr. John Powell, a professor of physics at the University of Oregon, with several years' experience in the investigation of collisions. There was no challenge to Dr. Powell's qualifications. Plaintiff asked Dr. Powell the following question:

> "Q Is it possible, sir, when two objects are moving before the point of first contact and continue moving thereafter to make a determination of where that point of first contact took place from where the debris ends up?"

It appears from the offer of proof that Dr. Powell would have answered the question as follows:

> "* * * the conclusion as to the point of impact which would rest solely on the evidence of the location of the debris under the circumstances that you

described would be a very, very, unreliable conclusion as to point of impact—it would be very, very unreliable."

Defendant Frisk objected to the testimony as irrelevant and immaterial because, at the time the question was asked

"* * * there has been no indication as to the angle these objects hit. I think that is relevant to this case for this reason,—to know the weight or the speed or metals involved or the details of damage, * * *."

Defendant Moberly joined in the objection, and added the additional grounds that the answer would invade the province of the jury, and that

"* * * This is not a proper field for expert opinion under Oregon law; and for the further reason that in those states which do permit the rule is that before an opinion can be expressed, all of the variables must be eliminated down to the point of the actual facts of the particular case upon which the opinion is requested. None of those matters are in evidence here."

The trial court ruled the evidence inadmissible because it was in the nature of accident reconstruction evidence.

We think the court should have permitted Dr. Powell to answer the above question, but from a careful review of all the evidence we think the error was not prejudicial. We think the jurors were fully aware that moving objects have a tendency to continue in motion until their momentum has been expended. The location of the debris was described by the witnesses in general terms as being in the westbound lane. It must have been apparent to the jury that the point of impact could not be determined with any degree of

accuracy from the location of a wide variety of debris scattered over a large area of the highway.

Dr. Powell was permitted to testify to the distance it would take an object to fall one foot and two feet while traveling at various rates of speed. He was examined and cross-examined extensively on this part of his testimony. Dr. Powell was, in effect, permitted to prove that moving debris would travel some distance before coming to rest on the roadway. He was only prevented from expressing his conclusion that the point of impact could not be accurately determined from the location of the debris. The jury might have been helped to some degree by Dr. Powell's answer to the question to which an objection was sustained, but we think his answer would have had no effect on the jury's resolution on the critical factual questions. We find no merit in this assignment of error.

The judgment of the trial court is affirmed.

TONGUE, J., dissenting.

I most respectfully dissent because, in my opinion, the offered testimony of previous instances of unsafe passing of vehicles by the Jeep driven by defendant Moberly was clearly relevant and admissible on the issue whether, at the time of the subsequent accident, he pulled out from behind the Frisk car and trailer, after following behind it for some distance, and crossed the center line into the path of plaintiff's truck.

The majority say that "[t]he crucial factual issue at trial was whether the plaintiff's truck or the Frisk trailer was on the wrong side of the center line." This may have been the crucial issue in plaintiff's claim against defendant Frisk. In plaintiff's claim against defendant Moberly, however, the issue whether Mob-

erly had crossed the center line was at least an equally crucial issue.

In considering the relevance of any offered evidence it is important to bear in mind that the fundamental rule of evidence is that evidence that is relevant is admissible unless it violates one of the exclusionary rules of evidence, such as hearsay, privilege, or "best evidence," under which, because of the unreliability of certain types of evidence or for reasons of public policy, various types of evidence are excluded, even though relevant. Cf. *Trook v. Sagert,* 171 Or 680, 688, 138 P2d 900 (1943).

To be relevant evidence must have probative value. In order to be relevant, however, it is not necessary that the evidence offered must render the desired inference more probable than other possible inferences, but it is sufficient if the evidence offered renders the desired inference more probable than it would be without the evidence or, stated otherwise, that the desired conclusion is then a natural and plausible one among other various conceivable ones. McCormick, Evidence (2d ed) 437, § 185, and Wigmore on Evidence (3d ed) 419, § 32.

This court, in *Trook v. Sagert, supra,* at 688, has stated the following broad test of relevance:

"* * * If a witness knows something which under the common rules of logic will advance the search for the truth, it is relevant * * *."

and, at 690:

"* * * Any fact which has a rational probative value is commonly deemed relevant, and therefore admissible. If it throws some light upon the issue, the logical connection is universally conceded."

The question of relevancy not infrequently arises in cases in which evidence is offered to show the conduct of a party at some time and place prior to the event in issue. Evidence of other negligent acts at other and unrelated times and places is inadmissible, as a general rule (although subject to exceptions) because the inference that the actor was also negligent at a later and different time and place is usually not considered to be a natural or plausible inference. But the conduct of a party at a time and place that is not too remote may be the basis for a natural and plausible inference that his conduct was the same at the time and place of the event in issue. Thus, in automobile accident cases, evidence of the speed or other manner in which a car was operated before an accident is frequently offered as evidence that its speed or manner of operation was the same at the point of the accident. For an exhaustive annotation on this subject, see Annot., 46 ALR2d 9.

The majority, after discussion of the subject of judicial discretion in considerable detail, concludes with the statement that "[t]he testimony of Kuykendall and McMartin had some probative value; that is, it had some tendency to establish that Moberly was inclined to pass other vehicles under possibly unsafe conditions during the trip involved in the case."

Despite that statement, the majority would affirm the exclusion of such testimony by the following reasoning:

"* * * if the testimony of Kuykendall and McMartin had been admitted for the jury's consideration, it could have consumed the court's time in the trial of collateral issues such as the identity of the Moberly vehicle, the similarity of the road and traffic conditions, and the accuracy of the witnesses'

observations and reporting. Moreover, it might well have been given undue weight by the jury. The trial judge could reasonably conclude that these dangers outweighed the limited probative value of the testimony. * * *"

It is true that "[w]hen the offered testimony gets to the outer fringes of relevancy," trial judges are allowed "a certain amount of leeway," as stated by the majority, quoting from *Byrd v. Lord Brothers,* 256 Or 421, 426, 473 P2d 1018 (1970). In such cases it is proper for the trial judge to consider whether, if the offered evidence has only slight probative value, any such probative value is outweighed by other considerations, such as those of prejudice, unfair surprise, and time consumption in the trial of collateral issues. *Kelty v. Fisher et al,* 101 Or 110, 118, 199 P 188 (1921).

When, however, offered evidence is not on the "outer fringes of relevancy," but has substantial probative value, the trial judge has no such discretion to exclude it and the evidence must be admitted unless some good reason to exclude it has been shown. *Rich v. Cooper,* 234 Or 300, 312, 380 P2d 613 (1963).

It may also be true that in the application of the general rule of relevance to some specific types of evidence the courts may have been influenced by such other considerations in the development of rules relating to the admission and exclusion of such types of evidence that are more limited and restricted than the general rule of relevance, as stated in *Trook v. Sagert, supra,* and in other similar cases and authorities. The limitations on evidence of offers of compromise and insurance against liability because of considerations of possible prejudice and public policy are two possible examples.

The subject of evidence of prior manner of driving in automobile accident cases, however, does not appear to have been treated in this manner by most of the cases and authorities. See Annot., 46 ALR2d 9. Of even more importance in this case is the fact that no such reasons to exclude this evidence were shown, or even urged, on the trial of this case. Indeed, defendants' objections to such evidence were not based upon the contention that any probative value was outweighed by considerations such as collateral issues, and the trial judge, according to statements made by him of record, did not exclude this evidence because of any such considerations. Instead, he excluded it for the sole reason that he agreed with defendants' contention that such evidence was not relevant because it did not have sufficient probative value to satisfy what he understood to be the test of relevance for this type of evidence, as stated by this court in *Shoopman v. Long,* 252 Or 341, 449 P2d 439 (1969).

This court in *Shoopman* made no reference to such considerations as surprise, prejudice, or trial time for collateral issues, but approached the problem of admissibility of evidence of the speed of defendant's car at a point 12 miles from the point of the accident as a problem of determining whether such evidence had any rational probative value or whether it was "too remote" to have any such value. It was in such a context that it was stated in *Shoopman,* at 343, that:

"* * * The discretion mentioned in the cases should be more accurately described as the process of judging the offered evidence in its relationship to all of the evidence relative to speed. *If it fits into a pattern with the other evidence and shows continued speed* it should be admitted. *If the evidence stands alone,* as in *May v. Mack, supra,* it should be

rejected. In the latter case, the witness had testified to the speed 11 miles distant and that was all of the evidence connecting the accident with the speed that had been observed by the remote witness. In *May v. Mack, supra,* we hold that "The testimony offered [of the remote speed] was not competent without an offer of *further evidence connecting it with the accident* and was properly excluded.' 225 Or at 284, 356 P2d at 1062." (Emphasis added)

According to the annotation in 46 ALR2d 9, at 13-14 and 18-20, the courts have made a distinction between cases involving evidence of prior speed, which may quickly be reduced, and evidence of prior driving conduct of a nature, which is more likely to continue. Even in cases involving evidence of prior speed, however, testimony of driving at an excessive speed at two or more remote points prior to the point of the accident is generally held by other courts to be admissible (46 ALR2d at 57). This is particularly true where such evidence is not the sole evidence of speed at the point of the accident, but is offered to corroborate the testimony of a witness of excessive speed at that point. (46 ALR2d at 14 and 21.)

In *Shoopman* the testimony subject to objection was that of one witness who testified that at one point 12 miles from the point of the accident that defendant was driving at an excessive speed. Even that evidence was held admissible because, in addition, there was other evidence of speed at the point of the accident, including the time interval that had elapsed between the time when the witness previously observed the speed of defendant's car and his arrival at the scene of the accident.

In this case the offered testimony of the manner of driving of defendant Moberly prior to the point of

the accident was not limited to that of one witness and at one point. The offer of proof included the testimony of witness Kuykendall that at a point about 12 miles from the accident he observed Moberly pass his truck as it was starting into a curve only 50 feet away and at a speed of 60 to 70 miles per hour. He also testified that after that curve that he observed Moberly continuing on down the road, which was "fairly curvy," at a speed of 60 to 70 miles per hour.

The offer of proof also included the testimony of witness McMartin that at a point about 10 miles from the accident Moberly passed his truck on a hill with visibility of "maybe 100 feet at the very maximum," at a speed "in excess of 55 to 65" miles per hour. McMartin also testified that before Moberly passed him he observed Moberly coming up behind him and passing "a couple of other vehicles" on a two-lane highway with curves such that "there is no room there that is long enough to pass with complete visibility on the hill" and with no "really straight stretch." McMartin also testified that after Moberly passed him and after he "topped over this hill" he observed Moberly at a point about a mile from Elkton (about eight miles from the point of the accident) following behind another vehicle "duck out" in an apparent attempt to pass as "they went around" a curve and also saw him "duck out a couple of times and come back in."

In addition, witness Jewett testified that Moberly passed him at a speed of 55 to 60 miles per hour, in the outskirts of Elkton. That point was about five and one-half miles from the point of the accident.

Thus, testimony was offered from which the jury could have found that prior to the accident Moberly, not only was driving at an excessive speed, but passed

four vehicles at places where it was not safe to pass and "ducked out" in apparent attempts to pass two or three other vehicles.

This testimony was offered to corroborate plaintiff's testimony that at the point of the accident the Moberly vehicle pulled out from behind the trailer and into plaintiff's traffic lane for a head-on collision, in which Moberly was killed.

Defendant Frisk, however, testified not only that it was plaintiff's truck, rather than his trailer, that crossed the center line, but also that although Moberly followed his car and 20-foot trailer for three or four miles while Frisk was driving at an average of 35 miles per hour Moberly kept seven to ten car lengths behind and never attempted to pass Frisk and stayed in his proper traffic lane at all times. This direct conflict of testimony presented the crucial issues to be decided by the jury.

As previously noted, the majority concede that the offered evidence had "some logically probative value," but affirmed the exclusion of that evidence because of concern over "the court's time in the trial of collateral issues" and the possibility that such evidence might be given "undue weight" by the jury.

In my opinion, however, the offered testimony was not evidence of "slight probative value," so as to make it proper to weigh its probative value against such considerations. This was the most important evidence offered by plaintiff on the issue of the liability of defendant Moberly. It was also, in my opinion, clearly relevant for consideration by the jury in deciding whether to believe plaintiff or Frisk and was at least admissible for the purpose of corroborating plaintiff's testimony.

As such, it is my opinion that neither the possible additional court time required as the result of such testimony nor the possibility that such important evidence might be given considerable weight by the jury is a proper reason for excluding it.

It may be true, as stated by the majority, that in cases involving offers of evidence of speed or other driving conduct at points some distance from the point of the accident the trial judge has some discretion. It is also true, however, as stated by the majority, that as to such matters the trial judge does not have complete freedom of decision, but must apply the correct and proper rule of law as a standard in the exercise of his discretion in such matter.

In my opinion, however, the majority fails to recognize and apply the equally well-established rule that when a trial judge rules on such a matter, but without application of the proper rule of law as a standard for the exercise of his discretion, or by application of an incorrect rule of law, he will be reversed by this court and the case will be remanded for a new trial. *State v. Lewis,* 113 Or 359, 364, 230 P 543, 232 P 1013 (1924). See also *Yundt v. D. & D. Bowl, Inc.,* 259 Or 247, 486 P2d 553 (1971).

In this case the record is clear from statements by the trial judge in considering this offer of testimony that his understanding of the rule of *Shoopman* was that "isolated instances" of prior unsafe driving were inadmissible "unless you can show a continued course of conduct down to the scene of the accident." The trial court also stated that in *Shoopman* the "continued course of conduct" was proved by proof of "the time element," i.e., that the defendant in that case "clearly would have had to have continued the speed to arrive at the scene of the accident at the time that he did."

As pointed out at trial by counsel, however, the offered testimony involved far more than "* * * just a couple of isolated instances." Of far greater importance, however, *Shoopman* does not say that there must be proof of a "continued course of conduct down to the scene of the accident." Instead, *Shoopman* (at p 343) says that it is sufficient if the offered evidence "* * * fits into a pattern with the other evidence and shows continued speed * * *." In *Shoopman* this court went on to expressly approve of its prior decision in *May v. Mack et al,* 225 Or 278, 356 P2d 1060 (1960), in which it was held that testimony of speed at one point 11 miles from the accident "* * * was not competent without an offer [of proof] of *further evidence connecting it with the accident."* 225 Or at 284 (emphasis added).

In "speed" cases, proof of such a "time element" may be sufficient in cases involving alleged excessive speed to "connect up" evidence of excessive speed at points prior to the point of the accident. Just what additional proof would have been required by this trial court in cases involving other types of unsafe driving, including unsafe attempts to pass other vehicles, in order to establish a "continued course of conduct down to the scene of the accident," does not appear, unless it would require testimony of a witness who followed defendant's vehicle for the entire intervening distance.

As previously stated, the jury could have found from the offered testimony in this case that prior to arriving at the point of the accident Moberly passed at least four other vehicles and "ducked out" in an apparent attempt to pass at least two or three additional vehicles, all when it was not safe to do so. In my opinion, the offer of proof satisfied the "pattern"

of conduct requirement of *Shoopman,* as well as the requirement of "connecting" evidence, as stated in *May,* at least when offered to corroborate the testimony of plaintiff. Based upon that testimony the jury could have reasonably found that plaintiff's testimony that Moberly pulled out over the center line behind Frisk's trailer and into the path of plaintiff's truck was true and that Frisk's testimony to the contrary was not true.

It is my opinion that the approval by the majority of the exclusion of this testimony is inconsistent with basic and established principles on the subject of relevance in that the majority approves the application by the trial judge of a standard so strict as to require that the offered evidence must be such as to render *probable* the inference that Moberly tried to pass the Frisk trailer at the time of the accident. On the contrary, as previously stated, evidence is admissible as relevant if, based upon such testimony, the desired inference is a natural and plausible one, among other possible inferences. As previously stated by this court in *Trook v. Sagert, supra* at 688, if the offered evidence "under the common rules of logic will advance the search for truth, it is relevant."

More specifically, it is my opinion that the approval by the majority of the exclusion of this testimony represents the approval of an improper and overly limited application of the rule as previously stated by this court in *Shoopman* and in *May* by requiring proof of a "continued course of conduct" to the point of the accident, rather than by other proof sufficient to establish a "pattern" of conduct or to "connect" such conduct as by evidence of several instances of similar improper driving conduct, as in this case.

Although this court has not previously had occasion to decide a case involving similar facts, most courts which have done so have held that such evidence should be admitted, even in cases involving alleged excessive speed, particularly when it corroborates other evidence, as in this case. *Byrne v. Matczak,* 254 F2d 525, 527 (3d Cir 1958); *United States v. Uarte,* 175 F2d 110, 112 (9th Cir 1949); *Dromey v. Inter State Motor Freight Service,* 121 F2d 361, 363 (7th Cir 1941); *Wigginton's Adm'r v. Rickert,* 186 Ky 650, 217 SW 933, 934 (1920); *Hefele v. Rotter,* 197 Wisc 300, 222 NW 220, 221 (1928); *Quinn v. Zimmer,* 184 Minn 589, 239 NW 902, 904 (1931); *Mathews v. Dudley,* 212 Cal 58, 297 P 544, 545 (1931); *Shellenberger v. Reading Transp. Co.,* 303 Pa 122, 154 A 297 (1931); *Jones v. Northwestern Auto Supply Co.,* 93 Mont 224, 18 P2d 305, 307 (1932); *Patton v. People,* 114 Colo 534, 168 P2d 266, 268 (1946); *Interstate Veneer Co. v. Edwards,* 191 Va 107, 60 SE2d 4, 6 (1950); *State v. Schrader,* 243 Iowa 978, 55 NW2d 232, 235 (1952); *Anderson v. Elliott,* 244 Iowa 670, 57 NW2d 792, 797 (1953); *Rowe v. Gibson,* 309 SW2d 173, 175 (Ky 1958); *Security Milling Company v. Ketchum,* 185 Kan 694, 347 P2d 433, 437 (1959); *Atkinson v. Mock,* 271 Minn 393, 135 NW2d 892, 894 (1965); and *Nat Harrison Associates, Inc. v. Byrd,* 256 So 2d 50, 55 (Fla App 1971). See also 46 ALR2d 9 at 57-60.

These cases include decisions in which trial courts have been reversed for excluding such evidence. For examples, see *Tingle v. Foster,* 399 SW2d 475, 477 (Ky 1966), and *Shapiro v. Klinker,* 257 Wisc 622, 44 NW2d 622, 624 (1950). In addition, see *Briggs v. Burk,* 174 Kan 440, 257 P2d 164, 172 (1953). No cases have been cited by counsel, and we have found none, in which

a trial court has been affirmed for excluding evidence substantially similar to that offered in this case.

For all of these reasons, I must respectfully dissent.

O'CONNELL, C.J., joins in this dissent.