Argued and submitted June 23, 1986, affirmed March 25, 1987

# MISSION INSURANCE COMPANY,
*Appellant,*

*v.*

# WALLACE SECURITY AGENCY, INC.,
*Respondent.*

(A8302-00823; CA A33425)

734 P2d 405

Donald J. Friedman, Portland, argued the cause for appellant. With him on the appellant's brief were Perkins Coie, Portland, Robert Wm. Burns, P.S., and Burns & Ricketts, Seattle, Washington. With him on the reply brief were Gregg D. Johnson, Perkins Coie, Portland, Robert M. Burns, and Williams, Kastner & Gibbs, Seattle, Washington.

I. Franklin Hunsaker, III, Portland, argued the cause for respondent. With him on the brief were Douglass M. Hamilton, and Bullivant, Houser, Bailey, Hanna, Pendergrass, Hoffman, O'Connell & Goyak, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Mission Insurance Company (plaintiff) brought this action against Wallace Security Agency (defendant) to recover money which plaintiff paid to its insured, Zidell Companies, as a result of damages from a fire. Judgment was entered on a jury verdict for defendant. We affirm.

Plaintiff issued a fire insurance policy to Zidell, which had contracted with defendant for security services for Zidell's ship building and repairing facility in Portland. Defendant employed Redmond and assigned him to the Zidell facility. On July 10, 1982, a fire broke out while Redmond was on duty. The fire started on a creosote wharf and severely damaged the wharf and other property. Plaintiff paid Zidell $5,515,902 under the insurance policy. It then brought this action as subrogee of Zidell's claims against defendant.

At trial, the cause of the fire was disputed. Defendant presented evidence that the electrical, liquid oxygen and natural gas lines on the wharf were charged at the time of the fire and that defendant had no responsibility for those lines. Plaintiff's position was that the damages were a result of defendant's negligence in hiring and training Redmond or that Redmond himself set the fire.

Plaintiff has assigned as error the trial court's refusal to allow four expert fire investigators to testify about specific statements made to them by eyewitnesses.[1] We do not agree that the experts should have been allowed to relate the statements. OEC 703 provides:

> "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

Although OEC 703 allows an expert to base an opinion on other than personal observation, on evidence presented at trial or on hypothetical facts, it does not authorize any witness

---

[1] The parties disagree as to whether the experts were allowed to testify that their opinions were based in part on statements of eyewitnesses. It is clear that the experts were permitted to inform the jury that part of the basis of their opinions was reports and observations of eyewitnesses.

to put in inadmissible evidence as the basis for the opinion. *State v. Knepper,* 62 Or App 623, 626, 661 P2d 560 (1983).

Plaintiff urges that federal case law interpreting the analogous federal rule shows that statements by eyewitnesses should be admissible. Plaintiff's authorities are not controlling here. It is true that FRE 703 (and OEC 703) recognize that experts often rely on facts and data supplied by third parties, *see Bryan v. John Bean Division of FMC Corp.,* 566 F2d 541, 545 (5th Cir 1978), but that does not give *carte blanche* to admitting otherwise inadmissible hearsay:

> "When courts have permitted disclosure of hearsay underlying an expert's opinion that result has comported with the concerns of the hearsay rule because some external circumstance guaranteed the reliability of the evidence. Sometimes the evidence can be relied upon because it constitutes a routine and customary record of a business concern, *see Long [v. U.S.,* 59 F2d 602 (4th Cir 1932)], *supra,* or because an uninterested, expert third party prepared the report, *see Challoner v. Day & Zimmerman, Inc.,* 512 F2d 77 (CA5), *vacated on other grounds,* 423 US 3, 96 S Ct 167, 46 L Ed 2d 3 (1975), or because experts—particularly doctors—customarily rely upon third party reports from other experts—such as pathologists and radiologists—in whom the testifying expert places his trust. *Cf. Box v. Swindle,* 306 F2d 882 (CA5, 1962); Fed R Evid 703 & Advisory Committee Note. Here, no such extraneous indicia of reliability exist." *Bryan v. John Bean Division of FMC Corp., supra,* 566 F2d at 546.

The eyewitness statements that plaintiff seeks to have admitted do not have such extraneous indicia of reliability. They are not "data or facts" within the purview of OEC 703.

Plaintiff next assigns error to the trial court's refusal to permit testimony from an expert on professional security service regarding industry standards for hiring and training personnel. Plaintiff argues that that exclusion precluded the jury from having a context in which to judge Redmond's conduct on the day of fire.[2] It relies on *Simmons, Inc. v. Pinkerton's, Inc.,* 762 F2d 591 (7th Cir 1985), in which the plaintiff had a contract for Pinkerton's to provide security services.

---

[2] The trial judge apparently excluded the testimony on the grounds that plaintiff had failed to link the evidence to the contract between Zidell and defendant and had failed to show how the testimony was relevant as to the cause of the fire and that the evidence was cumulative.

Pinkerton's failed to screen and train a security guard properly and, after a fire, the plaintiff sued Pinkerton's on theories of negligence and breach of contract. Pinkerton's argued that, under Indiana law, the trial court erred in allowing evidence of industry wide practices in regard to training. The plaintiff argued that the expert testimony was cumulative, because Pinkerton's had stipulated that the guard was acting in the scope of his employment. The court held that the admission did not require reversal. Concluding that "common sense" and not an "inflexible rule" should apply, the court determined that the evidence was not cumulative, because failure to train the guard adequately could show a breach of the contract between the parties, even if the jury did not conclude that the guard had acted wrongfully.

■　　A trial court has discretion to exclude or to receive expert opinion testimony. *See Yundt v. D & D Bowl, Inc.,* 259 Or 247, 259, 486 P2d 553 (1971). Here, unlike in *Simmons,* there was no breach of contract claim before the jury.[3] In addition, here the expert testimony would have been cumulative. Although plaintiff's expert would have provided some details as to the kind of pre-hiring investigation generally given a security guard and the importance of fire training and on-the-job procedures, those details were not necessary for the jury to assess whether Redmond's training was adequate. Plaintiff elicited from several of defendant's witnesses that Redmond was given *no* screening or training. Plaintiff played for the jury two slide presentations which defendant had used in training employes *after* it had hired Redmond. Defendant admitted that Redmond had not seen those. The jury could assess Redmond's conduct against that evidence and the expert testimony would have been cumulative. The trial court did not abuse its discretion in excluding it.

■　　Plaintiff next assigns as error the exclusion of testimony from psychiatrists about the personality traits of sociopaths and fire-setters. It argues that the testimony was relevant to the issue of whether Redmond was fit to be a

---

[3] In its final assignment of error plaintiff argues that the trial court erred in failing to instruct the jury on its claim for breach of contract. We agree with defendant that this issue was not before the jury and that plaintiff failed to preserve its objection. The breach of contract claim was withdrawn before trial. Plaintiff does not assign that ruling as error, nor do plaintiff's citations to the transcript show that the claim of error was preserved.

security guard and whether he might have set the fire himself. There was no evidence that Redmond started the fire. The testimony would have involved his sexual preferences and drinking habits. Neither expert would have testified that Redmond probably would have started a fire. Any possible relevance was outweighed by the chance of undue prejudice and the potentially misleading introduction of collateral matters. OEC 403; *Carter v. Moberly,* 263 Or 193, 200, 501 P2d 1276 (1972); *State v. Moore,* 72 Or App 454, 458, 695 P2d 985 (1985).

Affirmed.